IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSE F. VALENCIA

     **Plaintiff,**

v.                                                                                   CIV 12-137 JCH/WPL

CITY OF SANTA FE, SANTA FE POLICE
DEPARTMENT, GERALD SOLANO, ERIC
B. JOHNSON, ARIC WHEELER, GERALD
RIVERA, STEPHEN RYAN, and JOHN DOES
I-X, both in their official capacities and as
individuals,

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

     This matter comes before the Court on *Defendants' Motion to Dismiss No. 1: Dismissal of Valencia's 42 U.S.C. § 1985 Claims, Official Capacity Claims Against the Individually Named Defendants, and § 1983 Claims Against the Santa Fe Police Department.* (Doc. 17). In the underlying action, Plaintiff Jose F. Valencia, a former member of the Santa Fe Police Department ("SFPD"), accuses Defendants – the City of Santa Fe ("the City"), SFPD, and several SFPD officers – of conspiracy, civil rights violations, wrongful termination, abuse of process, defamation, and violation of the New Mexico Whistleblower Protection Act, NMSA 1978, § 10-18-3, in connection with what he claims was an unsuccessful attempt to entrap him into committing a crime, followed by an improper internal investigation and, eventually, by his termination from the SFPD. In support of the instant motion for partial dismissal, Defendants argue that Plaintiff has failed to state a conspiracy claim under 42 U.S.C. § 1985 or § 1986; that the individually-named Defendants are entitled to the dismissal of all claims against them in

their official capacities; and that Plaintiff cannot properly bring a federal claim under 42 U.S.C. § 1983 against the SFPD, as it is not a suable entity apart from the City.  The Court having considered the Complaint, motion, briefs, and the relevant law, and being otherwise fully informed, finds that Defendants' motion should be granted in part and denied in part.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

The Plaintiff in this case is a former Detective in the SFPD and high-ranking member of the police officer's union.  Plaintiff first came to work for the SFPD as a Patrol Officer in April 2000, and was subsequently promoted to Detective in the  Juvenile Investigations Division in February 2004.  Following his promotion, Plaintiff joined the Board of Directors of the Santa Fe Police Officers Association ("SFPOA"); he was eventually elected Vice President of the union in December 2006.  Pursuant to his role as Vice President, Plaintiff served as the lead negotiator for the SFPOA's collective bargaining team, and took on duties including representing union members recommended for termination at their pre-termination hearings.

### Run-Ins With Defendants

The Complaint recites how a series of incidents between Plaintiff and the Individual Defendants (Gerald Solano, Eric B. Johnson, Aric Wheeler, Gerald Rivera, Stephen Ryan, and John Does I-X) and City Defendants (the City of Santa Fe and SFPD) culminated in Defendants' seeking to entrap him into committing a fireable offense.  The underlying incidents are set forth as follows:

### *Defendant Solano*

In October 2006, Plaintiff alleges that he defended union member Louis Carlos, a Detective assigned to the SFPD's Region III Multi-Jurisdictional Drug Task Force, ("Region III

Task Force") "from illegal conduct and harassment" committed by Defendant Solano, a Sergeant in the SFPD. (Doc. 1 Cplt. ¶ 37). Solano was eventually reprimanded for his conduct.

***Defendant Ryan***

In August 2007, Plaintiff served as a union representative at the pre-termination hearing of an unidentified officer recommended for termination by Defendant Ryan, a Lieutenant in the SFPD. The Complaint alleges that the recommendation of termination was overturned after Plaintiff demonstrated that Ryan violated the officer's due process rights, and that Ryan was reprimanded for his conduct.

In July 2008, Plaintiff again served as union representative for an officer investigated by Ryan, who recommended termination on the basis of acts the officer was ostensibly shown to have committed in video surveillance footage. The officer was terminated, and Plaintiff demanded arbitration that, he alleges, brought to light the likelihood that the footage had been tampered with for the purpose of maliciously prosecuting the union member.

***Defendant Rivera***

In December 2007, Plaintiff was assigned to investigate a stabbing incident involving the juvenile nephew of Defendant Rivera, a Lieutenant in the SFPD. The Complaint alleges that several SFPD officers ordered Plaintiff to arrest the other party involved in the incident, and to represent on his police report that Rivera's nephew was the victim in order to justify the arrest. When Plaintiff uncovered that Rivera's nephew was the actual aggressor, he refused to arrest the other party, and instead referred the crime to both the Santa Fe District Attorney's Office and Juvenile Probation & Parole. Plaintiff claims that Rivera then demanded an administrative investigation into Plaintiff's conduct, which was denied by the Chief of Police. Rivera's nephew was subsequently convicted of aggravated battery with a deadly weapon.

3

Plaintiff represented two other union members recommended for termination by Rivera at their pre-termination hearings in May and June 2008.  In both instances, the recommendations for termination were overturned by the Chief of Police, and Rivera was verbally reprimanded for misrepresenting evidence in a disciplinary proceeding.

**Defendants Johnson and Wheeler**

In December 2008, Plaintiff alleges that he discovered that two SFPD Recruiting Officers, Gillian Alessio and Stephanie Rivera, were submitting falsified overtime sheets, which were being approved by Defendants, SFPD Chief Johnson and Deputy Chief Wheeler.  Plaintiff reported the alleged fraud to various City officials, including Santa Fe Mayor David Coss, which, Plaintiff claims, led Johnson to confront him and threaten to retaliate against him if he did not withdraw his report.

One month later, at a SFPOA open meeting in January 2009, Plaintiff alleges that he was confronted by Alessio and Rivera, who accused him of failing to protect their interests and demanded that he resign.  The officers then initiated a "no confidence" vote against Plaintiff, which failed among the union members.

**The City Defendants**

In January 2008, Plaintiff negotiated contracts for SFPOA members with the lead negotiator for the City, SFPD Capt. Gary Johnson.  Johnson submitted a tentative agreement to Plaintiff under the terms of which union members would gradually surrender pay raises allegedly owed to them under an existing Collective Bargaining Agreement between the City and the Union, which was allegedly effective for the period July 1, 2007 - June 30, 2010.  When Plaintiff submitted a counter-offer which would discontinue another program so that the pay raises could be preserved, the Complaint alleges that Johnson and other members of the City's

4

negotiating team threatened him with possible retaliation, including loss of employment.

**Plaintiff's Alleged Entrapment by Defendants and Max Gonzales**

On or about February 20, 2008, members of the Region III Task Force arrested Maximiliano ("Max") Gonzales, whom the Complaint identifies as "a convicted felon [and] a known drug dealer, [who] has been arrested for sexual predatory crimes, and is a known confidential informant for State and federal law enforcement officers," on charges of drug trafficking. *Id.* ¶ 52. According to Plaintiff, Gonzales offered to provide information on a "dirty cop" – whom he identified as Plaintiff – in exchange for a "downward departure" from the charges he faced. Plaintiff and Gonzales had a prior relationship, as they were distantly related by marriage and, further, had worked together pursuant to Gonzales' work as a police informant.

The Complaint recites that Region III Task Force officers recruited Gonzales to induce Plaintiff to commit the crime of selling a firearm to a known felon – though the Region III Task Force is not tasked with the investigation of firearms violations.

On February 22, 2008 and February 26, 2008, Region III Task Force officers and FBI Agent Nancy Duncan recorded a series of telephone calls placed by Gonzales to Plaintiff. Defendants Solano and "one or more John Doe Defendants" were allegedly among the officers who were part of the alleged entrapment scheme. *Id.* ¶ 74. Plaintiff alleges that neither the officers nor Agent Duncan ever obtained a search warrant or Order of Inception to legally record the conversations. Plaintiff further asserts that he was unaware that Gonzales was a convicted felon until "the last minute of the final conversation that was recorded" between them. *Id.* ¶ 61.

Plaintiff asserts that he reported Gonzales' phone calls to his immediate supervisors, per SFPD standard operating procedure. Plaintiff further claims that he found the calls suspicious, as he knew Gonzales to be afraid of firearms. In accordance with his training, Plaintiff claims

5

that he attempted to gain Gonzales' confidence by use of deception, in an effort to find out why Gonzales had sought him out for the purpose of buying a firearm.  Nevertheless, Plaintiff claims that he never formed the intent to provide Gonzales with a firearm, never promised to provide him with a firearm, and never committed any overt act to assist Gonzales in obtaining a firearm.

**SFPD's Internal Investigation of Plaintiff**

In September 2008, Defendant Rivera – whose prior dealings with Plaintiff included the investigation of his juvenile nephew by Plaintiff and Plaintiff's union representation of officers he had recommended for termination – informed Plaintiff that he had "been identified as the TARGET of an Administrative Investigation."  *. Id. ¶* 83.  Though Plaintiff immediately alerted Chief Johnson of his concerns about Rivera's bias against him and history of misrepresenting evidence, Rivera remained on the investigation.

At the onset of his initial interview with investigating officers Rivera and Ryan, Plaintiff alleges that he was not informed of the nature of the investigation or given the names of the complainants against him, as mandated by New Mexico law.  On the contrary, Plaintiff claims that he was told that he was being investigated following a citizen complaint.

In April 2009, Rivera ordered Plaintiff to submit to a second interview, again conducted by Rivera and Ryan.  The Complaint recites that Plaintiff produced the cellular phone he had used in his phone calls with Max Gonzales, so that the officers could verify that the calls had occurred as Plaintiff maintained, and contrary to Rivera's representations.  Rivera declined to take the telephone or to compare SFPD's call logs to the information on the device.

Over the month of July 2009, Rivera twice contacted Plaintiff to threaten him with being charged with dishonest behavior "if he didn't begin to remember more details about his association with Max Gonzales."  *Id. ¶* 93.  Plaintiff asserts that he complied with both requests

6

by submitting additional written statements.

Plaintiff alleges that he timely requested a transcript of the interrogations by Rivera and Ryan, but was denied.

**Effect of Internal Investigation on Contract Negotiations**

In July 2009, Plaintiff alleges that SFPD Captain Johnson and Santa Fe Assistant City Attorney Mark Allen, among others, stated to him during contract negotiations that if he conceded the 3% pay raises guaranteed to union members under the existing CBA, "he could expect to receive leniency from the city manager with respect to the then-currently ongoing internal affairs investigation and would become one of the 'darlings of the City.'" *Id.* ¶ 97. Plaintiff refused, and the pay raises went though as provided for under the terms of the CBA.

**Findings of Internal Investigation**

On July 22, 2009, the day after contract negotiations concluded, Plaintiff was served with the findings of Rivera's and Ryan's investigation. The officers sustained all allegations of misconduct against Plaintiff, and also brought a charge of criminal misconduct against him. Plaintiff claims that he was not informed that he was the subject of a criminal investigation at any point during the investigation.

On July 22. 2009, then-Chief Wheeler placed Plaintiff on "Alternate Duty Status" pending an administrative disciplinary hearing.

**Plaintiff's Informal Administrative Hearing**

In August 2009, Plaintiff wrote to NM Law Enforcement Academy ("NM LEA") Director Art Ortiz requesting to be informed of all relevant documents and other evidence to be cited at his forthcoming disciplinary hearing. Plaintiff informed Ortiz that he needed these documents in order to properly prepare his defense. While Ortiz denied Plaintiff's request,

Plaintiff alleges that several of these documents were released to the news media.

On a date in late August or early September 2009, NM LEA Director Ortiz presided over an informal hearing at the State Law Enforcement Academy.  Ortiz denied Plaintiff's request for legal representation at the proceeding.  Further, Plaintiff contends that he was denied the ability to take discovery, and had limits imposed on the number of witnesses he was allowed to present in his defense and the amount of time he was allotted to make his case.

At the conclusion of the informal hearing, NM LEA Director Ortiz recommended that Plaintiff's police officer certification be revoked, purportedly noting that Plaintiff "did not take responsibility for his actions."  *Id.* ¶ 108.

**Plaintiff's Formal Administrative Hearing**

On September 10, 2009, Plaintiff formally requested that the NM LEA Board conduct a formal hearing into the allegations against him, and again submitted a written request to Ortiz for access to the evidence to be used against him.  His request was again denied.

On September 18, 2009, then-SFPD Chief Wheeler placed  Plaintiff on paid administrative leave, and issued a press release announcing his decision.  Plaintiff responded by again forwarding his document request, in advance of his formal disciplinary hearing.  Wheeler denied Plaintiff's request, allegedly informing Plaintiff that the Assistant City Attorney advised him that the need to protect Plaintiff's civil rights was outweighed by the potential liability to the City of Santa Fe if Wheeler provided the documents to Plaintiff.

On November 19, 2009, Wheeler presided over Plaintiff's disciplinary hearing.  Plaintiff claims that he was denied access to all evidence utilized against him at the hearing, and was not given the opportunity to properly defend himself against the allegations asserted against him.

On January 28, 2010, Chief Wheeler recommended to City Manager Robert P. Romero

that Plaintiff be terminated from the SFPD.

**Plaintiff's Final Administrative Hearing**

On February 4, 2010, Hearing Officer Mark Radosevich conducted Plaintiff's final administrative hearing, for the purpose of considering whether Plaintiff's law enforcement officer certification should be revoked. At the hearing, FBI Agent Nancy Duncan testified that, *inter alia*, Max Gonzales received a downward departure from the drug trafficking charges he originally faced in exchange for his participation in the operation that targeted Plaintiff; Plaintiff never indicated in any of the recorded conversations that he would obtain a firearm for Gonzales; Duncan was unaware of any objective evidence that Plaintiff had prior knowledge of Gonzales' felony criminal status; and Duncan's filing of a complaint against Plaintiff with the Internal Affairs division of the SFPD was at least partly based on her mistaken belief that Plaintiff had described one or more SFPD undercover officers and the location of the Region III Task Force office to Gonzales, after she was misled by a colleague.

**Plaintiff's Termination**

On February 12, 2010, City Manager Robert P. Romero terminated Plaintiff's employment with the SFPD. Plaintiff sent Romero a written demand for arbitration, pursuant to the existing CBA. On a date not set forth in the Complaint, Plaintiff's arbitration demand was denied. Further, Plaintiff alleges that he was not allowed the opportunity to appeal the termination decision administratively.

## LEGAL STANDARD

### Rule 12(b)(6)

Rule 12(b)(6) provides in relevant part that "failure to state a claim upon which relief can

be granted" is a defense to a claim for relief in any pleading.  A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993).  A motion to dismiss should be granted if, viewing the well-pleaded factual allegations of the complaint as true, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  Thus, in considering a Rule 12(b)(6) motion, a court must assume all well pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.,*144 F.3d 1302, 1304 (10th Cir. 1998). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  However, the rules do not require a court to accept legal conclusions or unwarranted inferences.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

## DISCUSSION

### I.    Plaintiff's § 1985 Conspiracy Claim

Count II of Plaintiff's Complaint sets forth a claim of conspiracy under 42 U.S.C. § 1985, asserting, *inter alia,* that "Defendants did conspire to, and did plan and engage in, a course of

conduct that was designed and implemented solely for the purpose of inducing Plaintiff to commit a crime – namely selling a firearm to a known felon." (Doc. 1 Cplt. ¶ 167). The Complaint does not identify the provision of § 1985 – a lengthy statute divided into three sections, each of which contains multiple provisions – under which Plaintiff brings his claim. However, Plaintiff clarifies in his response brief that he states a claim for conspiracy under two separate subsections of § 1985(2), as well as under § 1985(3).[1] In support of the instant motion, Defendants argue that Plaintiff has failed to plead sufficient facts to assert a conspiracy claim under any of these provisions. The Court takes up each of Defendants' arguments in turn.

### A. "Deterrence Claim" Under the Third Clause of § 1985(2)

A deterrence claim arises under the third clause of § 1985(2) when:

> [T]wo or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws.

§ 1985(2). Here, Defendants argue that Plaintiff has failed to state a deterrence claim because he has "failed to allege any fact which would indicate that Defendants somehow interfered with the administration of justice in the state courts as required by the [instant] clause." (Doc. 17 at 9). Defendants cite *Kush v. Rutledge,* 460 U.S. 719, 725 (1983), in which the Supreme Court noted that the instant clause "applies to conspiracies to obstruct the course of justice in *state* courts." (emphasis added).

Plaintiff responds that Defendants' "very narrow interpretation" of the instant clause as

---

[1]Accordingly, to the extent that the Complaint could be construed to assert a cause of action under any other section of § 1985, the Court deems such claim abandoned. Further, while Defendants also argue that Plaintiff has failed to state a conspiracy claim under 42 U.S.C. § 1986, the Court notes that Plaintiff does not mention § 1986 anywhere in his Complaint or response brief.

requiring a state court proceeding in order to state a deterrence claim "is neither consistent with the existing language of 42 U.S.C. § 1985(2), nor the original intent of the Ku Klux Klan Act." (Doc. 40 at 8).  In support of his position, Plaintiff contends that, while the first two clauses of § 1985(2) specifically require that conspirators obstruct a proceeding "in any court of the United States" – i.e, obstruction of a federal court case – the reference to "obstructing . . . the due course of justice in any State or Territory" in the third clause is less specific, and thus should be construed more broadly.  Further, Plaintiff argues that even if the Court finds that the instant clause requires him to plead a conspiracy to obstruct a state court proceeding, the New Mexico Court of Appeals has "recognized that labor grievance proceedings are quasi-judicial hearings." *Id.* (citing *Neece v. Kantu,* 84 N.M. 700, 706 (N.M. Ct. App. 1973)).  However, Plaintiff does not explain how or whether the facts set forth in the Complaint allege that Defendants conspired to obstruct a labor grievance proceeding.

The Court finds that Plaintiff has failed to state a deterrence claim under the instant clause.  As a threshold matter, the Complaint's failure to identify the section of § 1985 under which Plaintiff's conspiracy claim is brought is insufficient to provide his opponents "fair notice of what [his] claim is . . . and the grounds upon which it rests."  *Twombly,* 550 U.S. at 555 (quotation omitted).  Indeed, the Complaint fails to set forth even a threadbare recital of the elements of the instant cause of action, let alone link those elements to specific factual allegations in a way that would inform Defendants of the essence of his conspiracy claim.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand dismissal under Rule 12(b)(6)) (citing *Twombly,* 550 U.S. 544, 555 (2007)).

Further, even if the Complaint had identified the section of the statute under which

Plaintiff meant to bring his claim, it nevertheless fails to set forth facts to state a plausible conspiracy claim under the "deterrence" clause.  Notwithstanding Plaintiff's textual analysis of the statutory language, the fact remains that the Supreme Court's holding in *Kush* that the deterrence clause "applies to conspiracies to obstruct the course of justice in state courts" has never been overruled, and has been consistently followed by courts throughout the country, including this one.  *See Kush,* 460 U.S. 719 at 725 (1983); *Archuleta v. City of Roswell,* 2012 U.S. Dist. LEXIS 149907, at *14 (D.N.M., Sept. 30, 2012) (citing *Kush* for the proposition that the deterrence clause "has been construed to mean that it prohibits any conspiracy to obstruct a state judicial proceeding"); *Martinez v. Martinez,* 2010 U.S. Dist. LEXIS 38109, at * 32 (D.N.M., Mar. 30, 2010) (same).  Indeed, Plaintiff has not identified any cases, in or out of this Circuit, not requiring the existence of a state court proceeding.  Thus, because Plaintiff has failed to set forth any allegations that Defendants' conspiracy involved the obstruction of a state-court proceeding, the Court finds that he has not stated a deterrence claim under the instant clause. Accordingly, the Court finds that the portion of Plaintiff's conspiracy claim brought under the third clause of § 1985(2) should be dismissed with prejudice.

**B. "Enforcement Claim" Under the Fourth Clause of § 1985(2)**

Plaintiff similarly contends for the first time in his response brief that he has further stated a conspiracy claim under the fourth and final clause of § 1985(2) ("the enforcement clause").  The enforcement clause provides a cause of action where two or more persons conspire

> to injure [any citizen] or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

13

*Id.* In support of the instant motion, Defendants argue that, because the enforcement clause is directed towards equal protection of the laws, they are entitled to dismissal because Plaintiff's Complaint fails to allege facts demonstrating "class-based invidious discriminatory animus." (Doc. 17 at 9). Plaintiff responds that his Complaint sets forth allegations of a conspiracy against him by Defendants "with the intent to injure him and his property for lawfully enforcing, or attempting to enforce, the rights of individual persons (union members), as well as the entire class of persons (the entire membership of the SFPOA union), to the equal protection of the laws." (Doc. 40 at 13).

For the same reasons stated above with respect to his "deterrence claim," the Court finds that Plaintiff's failure to put Defendants on notice that his conspiracy claim is additionally based on the fourth and final "enforcement clause" of § 1985(2) is a deficiency mandating dismissal. However, the Court notes that Plaintiff's enforcement claim – unlike his deterrence claim, which is unsupported by any facts describing Defendants' interference with a state-court proceeding – is otherwise supported by facts in the Complaint. Under the heading "Count II: 42 U.S.C. § 1985 Conspiracy," the Complaint sets forth, *inter alia*, that Defendants conspired to injure Plaintiff "on account of his lawful discharge of his duties as the lead negotiator for [SFPOA]," (Doc. 1 Cplt. ¶ 175), as well as his exercise of his duties as "a union representative." *Id.* ¶ 178. Thus, the Court finds – on the record before it[2] – that the deficiencies in Plaintiff's pleading of

_____

[2]The Court does not reach the issue of whether membership in a union constitutes a class for purposes of an enforcement claim under the fourth clause of § 1985(2), as Defendants fail to argue that Plaintiff can prove no set of facts that would entitle him to relief under the instant clause. *Cf.* Doc. 42 at 7 (Defendants arguing that Plaintiff's putative conspiracy claim under § 1985(**3**) must be dismissed because "other courts considering the viability of § 1985(**3**) actions for conspiracies against unions have uniformly found insufficient class-based animus.") (emphasis added).

an enforcement claim under the fourth clause of § 1985(2) are curable.  Because Plaintiff has requested leave to amend as an alternative to dismissal without prejudice, the Court will allow him to amend his Complaint in a timely manner.  See *Staats v. Cobb*, 455 Fed. Appx. 816, 818 (10th Cir. 2011) (noting that leave to amend should be granted unless "apparent grounds to deny leave" exist, "such as undue delay, repeated failure to cure deficiencies in the pleadings, or undue prejudice to the opposing party"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We reiterate that the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim.").

### C.   "Deprivation of Rights Claim" Under § 1985(3)

Finally, Plaintiff asserts for the first time in his response brief that the general § 1985 cause of action set forth in his Complaint also covers a conspiracy claim under § 1985(3).   A claim arises under this section of the statute where two or more persons conspire

> for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.

§ 1985(3).  "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."  *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993).  "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Yaklich v. Grand County,* 278 Fed. Appx. 797, 801 (10th Cir. 2008) (quotation omitted).  In other words, "[i]n order to support a Section 1985(3) claim, the plaintiff must be a member of a statutorily

protected class, and the actions taken by defendant must stem from plaintiff's membership in the [protected] class." *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746 (10th Cir. 1980).  Here, Plaintiff asserts that he has pled facts showing that Defendants conspired against him based on his class membership in the SFPOA union.

Defendants contend that, even if Plaintiff's Complaint had put them on notice of his § 1985(3) claim, as required by *Twombly*, the claim would nevertheless fail because "it is doubtful whether any plaintiff can state a viable § 1985(3) claim without alleging that the conspiracy was racially motivated."  (Doc. 17 at 12) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (noting the discriminatory animus behind § 1985(3) conspiracy must be "racial, or perhaps otherwise class-based"); *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983) ("it is a close call whether Section 1985(3) was intended to reach any class-based animus other than [racial] animus"); *Bray v. Alexandra Women's Health Clinic*, 506 U.S. 263, 278 (1993) (women seeking abortions not a class within the meaning of  § 1985(3))).

The Court finds that Plaintiff does not -- and even if allowed amendment could not – state an actionable conspiracy claim pursuant to § 1985(3).  "Outside the context of racial discrimination, the Supreme Court has not defined what 'otherwise class-based' discrimination may be protected under § 1985(3)." *Yaklich*, 278 Fed. Appx at 802.  However, the Tenth Circuit has repeatedly indicated that discriminatory animus based on a plaintiff's union membership does not come within the scope of § 1985(3).  In dismissing a § 1985(3) claim based on membership "in a union which has particular views on nuclear safety," the Tenth Circuit noted in *Silkwood v. The Kerr-McGee Corp.* that "[o]ther courts considering the viability of § 1985(3) actions for conspiracies against unions have uniformly found insufficient class-based animus."

16

*Silkwood,* 637 F.2d 743, 748 (10th Cir. 1980) (collecting cases).  The Tenth Circuit reiterated that "§ 1985(3) [does] not cover conspiracies motivated by economic, political or commercial animus" in *Wilhelm v. Continental Title Co.,* again noting that it found nothing in Supreme Court precedent "to give any encouragement whatever to extend § 1985 to classes other than those involved in the strife in the South in 1871 with which Congress was then concerned." *Wilhelm*, 720 F.2d 1173, 1176 (10th Cir. 1983) ( rejecting "handicapped persons with sufficient conditions or factors in common . . . to be ascertainable" as a class for § 1985(3) purposes).  Accordingly, the Court finds that Plaintiff's claim under 42 U.S.C. § 1985(3) should be dismissed with prejudice.

## II.      Claims Against the Individually-Named Defendants in Their Official Capacities

Next, Defendants contend that the Individual Defendants –  Solano, Johnson, Wheeler, Rivera, Ryan, and John Does I-X – are entitled to dismissal of all claims asserted against them in their official capacities, on the ground that "an official capacity suit is 'only another way of pleading an action against an entity of which an officer is an agent'" – in this case, the City of Santa Fe.  (Doc. 17 at 14) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  The Court agrees.  It is well-established that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978 ); *see also Johnson v. Bd. of Curry County Comm'rs,* 2007 U.S. Dist. LEXIS 96214, at *; 90 Empl. Prac. Dec. (CCH) P43,022 (D.N.M., Nov. 8, 2007) ("Suing an individual defendant in an official capacity is the same as suing the governmental entity which the individual defendant serves," so that official-capacity claims against municipal employee "are redundant" of claims brought against the municipality).

17

Accordingly, the Court finds that Plaintiff's claims against the Individual Defendants in their official capacities should be dismissed with prejudice.[3]

### III.    § 1983 Claims Against SFPD

Finally, Defendants argue that, to the extent any of Plaintiff's claims against SFPD have been brought under § 1983, they are improper and must be dismissed.[4]  Defendants point out that because "SFPD is an administrative department of the City of Santa Fe, a municipal corporation," it lacks a legal identity apart from the City.  (Doc. 17 at 16), citing *Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir. 1985) (finding that Denver Police Department "is not a separate suable entity, and the Complaint will be dismissed to it"); *vacated on other grounds*, 800 F.2d 230 (10th Cir. 1986); *see also Braid v. City of Albuquerque Police Department,* No. Civ. 04-1125 JH/LCS. Slip Op. at 3-4 (D.N.M., May 2, 2005) (Doc. 13) (noting that *Martinez* "remains persuasive, if not binding, precedent," in dismissing § 1983 claims against Albuquerque Police Department for not being "a separate suable entity apart from the City, but .

---

[3]In an extensive, if largely irrelevant, discussion of issues related to the capacity to be sued in his response brief, Plaintiff appears to suggest that Defendants seek dismissal of all claims against the Individual Defendants in both their official *and* individual capacities. *See, e.g.,* Doc. 40 at 20 (Plaintiff arguing that "this action includes claims against the Individual Defendants under both federal law and state statutes that clearly provide ample reason not to dismiss 'all claims' against the Individual Defendants.").  This is plainly not the case, and the Court sees nothing in Plaintiff's analysis to alter its judgment that his official-capacity claims against the Individual Defendants are redundant of his claim against the City.

[4]It is unclear from the Complaint whether Plaintiff means to assert certain causes of action (such as his claim generically titled "malicious abuse of process") under federal or state law.  Defendants do not dispute that SFPD is a suable entity for purposes of Plaintiff's state law tort claims.  *See Weinstein v. City of Santa Fe, ex rel. Santa Fe Police Dept.*, 121 N.M. 646, 651 (1996) (holding that SFPD "may be held vicariously liable for any alleged [state law] torts committed by [its] officers").

18

. . merely the vehicle through which the City performs its security functions.").

In his response, Plaintiff argues that whether a police department may be named as a defendant to a claim brought under § 1983 is "an open question," referring to the fact that *Martinez* is no longer binding precedent in the Tenth Circuit, albeit for other reasons. (Doc. 40 at 25) (quoting *Villa v. Dona Ana County,* Civ. No. 09-976 BB/WPL (D.N.M., Sept. 14, 2010) (noting that "it is an open question that seems to make no practical difference in the case; Plaintiffs will not be allowed to obtain a double recovery no matter how many defendants they name") (declining to reach issue)).  Plaintiff does not, however, cite any authority, binding or otherwise, from this Court or the Tenth Circuit holding that a municipal police department is a suable entity for purposes of a § 1983 claim.

The Court will follow the practice of the Tenth Circuit, as well as several other circuits and the District of New Mexico, in continuing to rely on *Martinez* as persuasive precedent.  *See e.g., Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir.1992)("Sheriff's departments and police departments are not usually considered legal entities subject to suit."); *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381 (table, 1992 WL 51481 (10th Cir. March 12, 1992) (finding, in a non-precedential opinion, that Albuquerque Police Department is not a suable entity because it lacks a legal identity apart from the municipality); *Phillips v. City of Albuquerque, et al.*, No. Civ. 97-1324 JP/LFG, slip op. at 3-4 (D.N.M., June 11, 1998); *Harper v. City of Albuquerque, et al.*, No. Civ. 96-1048 BB/WWD, slip op. at 18 (D.N.M., Sept. 18, 1996).  Given the weight of Tenth Circuit precedent indicating that a municipal police department is not a suable entity within the meaning of § 1983, the Court find that Plaintiff's § 1983 claims against SFPD are improper and should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, it is therefore ordered that *Defendants' Motion to Dismiss No. 1: Dismissal of Valencia's 42 U.S.C. § 1985 Claims, Official Capacity Claims Against the Individually Named Defendants, and § 1983 Claims Against the Santa Fe Police Department.* (Doc. 17) is granted in part and denied in part as follows:

1.    Defendants' motion to dismiss Plaintiff's claim for conspiracy under the third clause of § 1985(2) is GRANTED, and Plaintiff's claim for conspiracy under the third clause of § 1985(2) is dismissed with prejudice;

2.    Defendants' motion to dismiss Plaintiff's claim for conspiracy under the fourth clause of § 1985(2) is DENIED, and the Court will allow Plaintiff 15 days from the date of this opinion to amend the Complaint to assert a claim under the fourth clause of § 1985(2) in the manner required by the legal standards set forth herein; Plaintiff's failure to amend by the Court's deadline will result in dismissal of the instant claim without prejudice;

3.    Defendants' motion to dismiss Plaintiff's claim for conspiracy under § 1985(3) is GRANTED, and Plaintiff's claim for conspiracy under § 1985(2) is dismissed with prejudice;

4.    Defendants' motion to dismiss all claims against the Individual Defendants in their official capacities is GRANTED, and Plaintiff's claims against the Individual Defendants in their official capacities are dismissed with prejudice;

5.    Defendants' motion to dismiss all claims against SFPD brought under § 1983 is GRANTED, and Plaintiff's claims against SFPD are dismissed with prejudice.


UNITED STATES DISTRICT COURT JUDGE