IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSE F. VALENCIA

    Plaintiff,

v.                                                    CIV 12-137 JCH/WPL

**CITY OF SANTA FE, SANTA FE POLICE
DEPARTMENT, GERALD SOLANO, ERIC
B. JOHNSON, ARIC WHEELER, GERALD
RIVERA, STEPHEN RYAN, and JOHN DOES
I-X, both in their official capacities and as
individuals,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on *Defendants' Motion for Partial Summary Judgment No. 1: Dismissal of Plaintiff's Fourth Amendment and Abuse of Privacy Act Claims* (Doc. 18). In the underlying action, Plaintiff Jose F. Valencia, a former member of the Santa Fe Police Department ("SFPD"), accuses Defendants – the City of Santa Fe ("the City"), SFPD, and several SFPD officers – of conspiracy, various violations of 42 U.S.C. § 1983, wrongful termination, abuse of process, defamation, and violation of the New Mexico Whistleblower Protection Act, NMSA 1978, § 10-18-3, in connection with what he claims was an unsuccessful attempt to entrap him into committing a crime, followed by an improper internal investigation and, eventually, by his termination from the SFPD. In support of the instant motion, Defendants argue that Plaintiff cannot establish that Defendants violated either the Fourth Amendment or the New Mexico Abuse of Privacy Act.[1] The Court having considered the Complaint, motion,

---

[1]Plaintiff does not enumerate separate causes of action for violation of the Fourth Amendment and violation of the state Abuse of Privacy Act. Rather, both of the claims in issue

briefs, and the relevant law, and being otherwise fully informed, finds that Defendants' motion should be GRANTED.

## BACKGROUND[2]

On or about February 20, 2008, members of the Santa Fe Police Department's ("SFPD's") Region III Multi-Jurisdictional Drug Task Force ("Region III Task Force") arrested Maximiliano Gonzales, a convicted felon, known drug dealer, and sometime confidential informant for State and federal law enforcement officers, on charges of drug trafficking. After his arrest, Gonzales offered to provide information on a "dirty cop" – whom he identified as Plaintiff, then a Detective in the SFPD – in exchange for a "downward departure" from the charges he faced. Specifically, Gonzales claimed that he could buy weapons from Plaintiff despite his status as a convicted felon. Plaintiff and Gonzales had a prior relationship, as they were distantly related by marriage and, further, had worked together pursuant to Gonzales' work as a police informant.

Region III Task Force officers recruited Gonzales to engage in an entrapment operation designed to induce Plaintiff to commit the crime of selling a firearm to a known felon.

On February 22, 2008 and February 26, 2008, Region III Task Force officers and FBI Agent Nancy Duncan recorded a series of telephone calls placed by Gonzales to Plaintiff.

---

are organized under Plaintiff's Count I for "42 U.S.C. § 1983 Violations," which sets forth seven pages of allegations apparently consolidating several claims.

[2]The relevant factual background in this case is more fully set forth in the Court's Memorandum Opinion and Order addressing *Defendants' Motion to Dismiss No. 1: Dismissal of Valencia's 42 U.S.C. § 1985 Claims, Official Capacity Claims Against the Individually Named Defendants, and § 1983 Claims Against the Santa Fe Police Department* (Doc. 17), which is filed contemporaneously herewith.

Defendants Solano and "one or more John Doe Defendants" were allegedly among the officers who were part of the alleged entrapment scheme.  Neither the officers nor Agent Duncan ever obtained a search warrant from a court of competent jurisdiction or an NMSA 1978 § 30-12-2 Order of Inception to record the conversations between Plaintiff and Gonzales.

The recorded telephone conversations between Plaintiff and Gonzales served as the basis for SFPD's Internal Affairs investigation and subsequent administrative discipline of Plaintiff, as well as Plaintiff's eventual termination.

## LEGAL STANDARDS

**Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M.,

Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

**Qualified Immunity**

Because a successful qualified immunity defense "generally shields from liability for civil damages government officials performing discretionary functions . . .  insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," special standards apply to the assessment of a summary judgment motion raising this defense. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted); *see also Hinton v. City of Elwood*, 997 F. 2d 774, 779 (10th Cir. 1993).

In analyzing a qualified immunity defense, this Court undertakes a three-part inquiry. First, the Court must determine whether the plaintiff's allegations, if true, establish a violation of the plaintiff's constitutional rights. *Gomes,* 451 F.3d at 1134.  Second, if the allegations meet that standard and the analysis continues, the Court must determine "whether the law was clearly established at the time the alleged violations occurred." *Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). A law is deemed clearly established "if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right." *Gomes*, 451 F.3d at 1134.  The Tenth Circuit has provided the additional guidance that, under ordinary circumstances, "there must be a Supreme Court or Tenth Circuit decision on point, or

the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains," *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), in order for a plaintiff to demonstrate that the law was clearly established.  However, in applying the first two prongs of the qualified immunity analysis, "[t]he judges of the district courts . . . [are] permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Finally, if the plaintiff shows that the law is clearly established, the third and final part of the inquiry requires the Court to consider whether, "extraordinary circumstances – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that her actions were unconstitutional that she should not be imputed with knowledge of a clearly established right."  *Gomes*, 451 F.3d at 1134 (internal quotation and marks omitted).

## DISCUSSION

### I.  Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment Claim

One of several claims set forth in Plaintiff's Count I asserts that Defendants violated his Fourth Amendment rights by "[r]ecording telephone conversations of calls made to Plaintiff's personal cellular telephone without having obtained a search warrant from a court of competent jurisdiction, and without probable cause."  (Doc. 1 Cplt. ¶ 131(C)).  With respect to the instant claim, Defendants argue that they are entitled to qualified immunity, as their conduct did not violate Plaintiff's clearly-established constitutional rights.  Specifically, Defendants contend that their admitted failure to obtain a search warrant did not violate Plaintiff's Fourth Amendment rights because it is well-established that the government may record a defendant's conversation

with another party without obtaining a warrant, so long as it does so with the other party's (in this case, SFPD informant Maximiliano Gonzales's) consent. Plaintiff responds, *inter alia,* that questions of fact exist as to 1) whether Gonzales' consent was knowing and voluntary, and 2) whether the recordings in issue were obtained in compliance with FBI guidelines.

### Voluntariness of Informant's Consent

"[W]hen the government records a defendant's conversation with another party, pursuant to that party's consent, neither the Fourth Amendment nor 18 U.S.C. § 2511(2)(c) is violated." *United States v. McKneely*, 69 F.3d 1067, 1073 (10th Cir. 1995). *See also United States v. Quintana,* 457 F.2d 874, 878 (10th Cir. 1972) ("it makes no difference which party initiated the call. We do not distinguish between calls initiated by [the defendant] and those commenced by [the informant]. The significant factor is that of the consenting party; hence a search warrant was not necessary"); *United States v. Longoria,* 177 F.3d 1179, 1182-83 (the Fourth Amendment provides no protection for one who discusses illegal activities with an undercover informant). In opposing the instant motion, Plaintiff does not dispute that Gonzales' consenting to the telephone tap would have obviated the need for Defendants to obtain a warrant before instituting the tap. Rather, Plaintiff contends for the first time that he has set forth a triable claim that Defendants' warrantless phone tap violated his Fourth Amendment rights because questions of fact exist as to whether Gonzales' consent to the tap was in fact knowing and voluntary. Plaintiff does not challenge the voluntariness of Gonzales' consent in the Complaint.

The Court does not find the existence of a question of fact as to whether Gonzales' consent was freely given. As Defendants note, courts have consistently held that the standard employed to determine whether a party's consent to recording of a telephone conversation is voluntary "is less stringent than that required to show consent for a physical search, and may

consist of circumstantial, rather than direct, evidence." *United States v. Abreu,* 730 F. Supp. 1018, 1030 (D. Colo 1990), *aff'd,* 935 F.2d 1130 (10th Cir. 1991) (citing *United States v. Fuentes*, 563 F.2d 527, 533 (2nd Cir. 1977)). "To establish consent, it will normally suffice to show that a party engaged in a conversation with the knowledge that it was being recorded." *Id*. *See also United States v. Skipworth,* 697 F.2d 281, 283 (10th Cir. 1983) (employing less stringent standard); *United States v. Axselle,* 604 F.2d 1330, 1338 (10th Cir. 1979) (same).

There is nothing in the record to suggest that Gonzales' participation in the telephone tap was involuntary. On the contrary, Plaintiff does not dispute that the alleged entrapment scheme only took shape when Gonzales himself told Region III Task Force officers that he had information about a "dirty cop" – Plaintiff – whom he could "convince . . . to commit a crime due to [their] past relationship." (Doc. 1 Cplt. ¶¶ 54-55). Gonzales went on to claim, according to Plaintiff, "that he could buy weapons from [Plaintiff] despite his criminal status as a convicted felon," which he "offered to do . . . in exchange for the offered 'downward departure' from the criminal charges he was facing." *Id.* ¶ 55. Thus, the undisputed facts show that Gonzales not only agreed to cooperate with Defendants, he instigated the arrangement by which he came to place a series of calls to Plaintiff, knowing that their conversation would be recorded. Accordingly, the Court concludes that the evidence supports an inference that Gonzales exercised independent and rational choice in consenting to the telephone tap.

### Irrelevance of FBI Guidelines to the Instant Constitutional Claim

Plaintiff further urges the Court to deny summary judgment on his Fourth Amendment claim because he has not had the opportunity to conduct discovery to determine "whether the FBI followed the guidelines from the U.S. Attorney General concerning the use of Max Gonzales as a confidential informant." (Doc. 32 at 13). Plaintiff cites various FBI guidelines

propounded by the Department of Justice as well as a selection from the U.S. Attorney's Criminal Resource Manual, which, Plaintiff contends, sets forth the four conditions which must be met in order "for a cooperating prisoner to engage in a consensually monitored telephone call." (Doc. 32 at 15).

Plaintiff's arguments do not preclude the Court from granting summary judgment on his Fourth Amendment claims. As an initial matter, neither the FBI nor FBI Agent Nancy Duncan is named as a Defendant in this case, and Plaintiff fails to argue, let alone demonstrate, that any of the named Defendants are bound by FBI policy. Equally important, Plaintiff fails to show – indeed cannot show – that violation of a federal administrative regulation is *ipso facto* evidence of a constitutional violation. On the contrary,

> governmental regulations only give rise to actionable claims when: 1) compliance with the regulation is mandated by the Constitution or federal law; 2) an individual has reasonably relied on the regulation promulgated for his benefit and has suffered substantially because of the violation of the regulation; or 3) the violation of the regulation results in a denial of equal protection.

*Raymer v. Parmenter,* 1992 U.S. App. LEXIS 21043, at *6 (10th Cir., Aug. 31, 1992); *see also United States v. Caceres*, 440 U.S. 741, 750 (1979) (tape recordings of conversations between a taxpayer and an Internal Revenue Service agent, obtained in violation of IRS regulations, were admissible at the taxpayer's trial, as the IRS was not required by the Constitution or other federal law to adopt procedures before engaging in consensual recording). Here, Plaintiff makes no attempt to show that Defendants were required by the Constitution to adopt any of the administrative guidelines he cites. Indeed, Defendants proffer a selection from one of the guidelines cited by Plaintiff, "The Attorney General's Guidelines for Domestic FBI Operations," which clarifies that "[t]hese Guidelines are set forth solely for the purpose of internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to

create any rights, substantive or procedural, enforceable by law by any party in any matter civil or criminal, nor do they place any limitation on otherwise lawful investigative prerogatives of the Department of Justice."  (Doc. 37 Ex.1).

Therefore, because the Court finds that Plaintiff's allegations, if true, would not establish a violation of his Fourth Amendment constitutional rights, the Court need not reach the second and third prongs of the qualified immunity analysis.  *Gomes*, 451 F.3d at 1134.

**II.  Defendants' Motion for Summary Judgment on Plaintiff's Abuse of Privacy Act Claim**

Plaintiff's Count I further contends that Defendants' recording of his telephone conversations with Gonzales without a warrant violated New Mexico's Abuse of Privacy Act, NMSA 1978 § 30-12-2.  (Doc. 1 Cplt. ¶ 131(C)).  The section of the statute cited by Plaintiff sets forth the grounds which must be met in order for a court to issue an *ex parte* order of interception "for wiretapping, eavesdropping or the interception of any wire or oral communication . . . upon application of the attorney general or a district attorney."[3] *Id.*  Another section of the statute, provides for "a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use such communications," in violation of the Act.  *Id.* § 30-12-11,

In support of the instant motion, Defendants argue that the Act specifically carves out

---

[3]Pursuant to § 30-12-2, an order of inception may be issued where there is probable cause to believe that it would lead to the obtainment of evidence "of the commission of:
   (1) the crime of murder, kidnapping, extortion, robbery, trafficking or distribution of controlled substances or bribery of a witness;
   (2) the crime of burglary, aggravated burglary, criminal sexual penetration, arson, mayhem, receiving stolen property or commercial gambling, if punishable by imprisonment for more than one year; or
   (3) an organized criminal conspiracy to commit any of the aforementioned crimes."

two exceptions to the warrant- or order-of-inception requirement that are applicable in this case. First, Defendants note that § 30-12-1(C) prohibits "knowingly and without lawful authority: reading, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone *without the consent of a sender or intended recipient thereof*" (emphasis added). Second, Defendants note that § 30-12-1(3) provides an exception for "interference with communications . . . by a person acting under color of law in the investigation of a crime, where such person is a party to the communication, or *one of the parties to the communication has given prior consent to such interception, monitoring or recording* of such communication" (emphasis added). Thus, according to Defendants, Gonzales' consent to the recording is as fatal to Plaintiff's Abuse of Privacy Act claim as it is to his Fourth Amendment claim.

Plaintiff responds that the second provision cited by Defendants, § 30-12-1(3), creates an exception that is inapplicable in this case, as it refers to the recording of communications undertaken "in the investigation of a crime." He points out that "an entrapment operation," designed by Defendants with the aim of *inducing* him to commit a crime, cannot be equated to a criminal investigation. (Doc. 32 at 10). Plaintiff's brief is silent, however, as to whether the other exception asserted by Defendants – § 30-12-1(C) – is applicable to the facts in issue.

The Court finds that the undisputed evidence that Gonzales willingly participated in – indeed, instigated – Defendants' alleged entrapment operation is destructive to Plaintiff's Abuse of Privacy Act claim. The exception set forth at NMSA § 30-12-1(C) plainly applies here, as Defendants made the recordings in issue "with[] the consent of [the] sender" of the communications. *See State v. Coyazo*, 123 N.M. 200, 203 (N.M. Ct. App. 1997), *cert. denied* 123 N.M. 168 (1997) ("[u]nder the express provisions of Section 30-12-1(C) . . . where the

consent of one of the parties to the communication has been obtained, the monitoring and use of such communications by authorities is permitted") (circumstantial evidence showed that inmate impliedly consented to telephone recording by placing call from detention center phone, where nearby sign noted that conversations could be recorded). Thus, while Plaintiff may have a viable argument that Defendants' conduct is not protected by the exception set forth at § 30-12-1(3), the Court need not reach the issue, as the exception set forth at § 30-12-1(C) applies to the undisputed facts in this case.

Accordingly, the Court finds that summary judgment should be granted as to Plaintiff's claim under New Mexico's Abuse of Privacy Act, NMSA 1978 § 30-12-1, et seq.

### III. Plaintiff's Argument Regarding Need For Additional Discovery

On the final page of his response brief, Plaintiff suggests that granting summary judgment on either of the instant claims is inappropriate, because "[d]iscovery has just commenced, and Plaintiff has not yet had the opportunity to discover factual information essential to his opposition to this position." (Doc. 32 at 24). Plaintiff does not set forth any theory that he hopes to support with facts obtainable on discovery. The Court concludes that Plaintiff's request refers to his claim that a question of fact exists as to whether Maximiliano Gonzales freely consented to the recording of his conversations with Plaintiff. For the same reasons set forth above with respect to Plaintiff's Fourth Amendment claim, Plaintiff's argument is unpersuasive in light of his own admission that Gonzales himself offered to "convince [Plaintiff] to commit a crime," in exchange for a "downward departure" from his drug trafficking charge. (Doc. 1 Cplt. ¶¶ 54-55). These are the facts as set forth by Plaintiff in his Complaint, and as stipulated to in his response brief. Moreover, Plaintiff has not sought to supplement his

brief with facts obtained on discovery in more than seven months since it was filed, nor has he moved to amend his Complaint to reflect a different understanding of Gonzales' participation in the recordings. Thus, the Court will not refrain from granting summary judgment on account of the need for further discovery.

## CONCLUSION

Therefore, for the reasons set forth above, the Court finds that *Defendants' Motion for Partial Summary Judgment No. 1: Dismissal of Plaintiff's Fourth Amendment and Abuse of Privacy Act Claims* (Doc. 18) is **GRANTED**.

_____
UNITED STATES DISTRICT COURT JUDGE