## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSE F. VALENCIA**

     **Plaintiff,**

**v.**                                     **CIV 12-137 JCH/WPL**

**CITY OF SANTA FE, SANTA FE POLICE
DEPARTMENT, GERALD SOLANO, ERIC
B. JOHNSON, ARIC WHEELER, GERALD
RIVERA, STEPHEN RYAN, and JOHN DOES
I-X, both in their official capacities and as
individuals,**

     **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on **(1)** Defendants' *Motion for Partial Judgment No. II: Dismissal of Plaintiff's New Mexico Whistleblower Protection Act Claims* (Doc. 89) **(2)** Defendants' *Motion for Partial Summary Judgment No. III*: *Dismissal of Plaintiff's Abuse of Process and Illegal Entrapment Claims* (Doc. 90), **(3)** Plaintiff's *Motion to Summarily Deny (Or in the Alternative, Strike) Defendants': Daubert Motion to Exclude Robert Romero; Motion for Partial Summary Judgment No. IV; and  Motion for Partial Summary Judgment No. V* (Doc. 102)*;* **(4)** Defendants*' Motion for Partial Summary Judgment No. IV: Dismissal of Plaintiff's Wrongful Termination and Defamation Claims* (Doc. 94); **(5)** Defendants' *Motion for Partial Summary Judgment No. V: Dismissal of Plaintiffs' Remaining Claims Brought Pursuant to 42 U.S.C. § 1983* (Doc. 95)*;* **(6)** Defendants' *Motion to Strike Plaintiffs Untimely-Filed First Amended Complaint* (Doc. 125); **(7)** Defendants' *Motion to Dismiss No. II: Dismissal of*

1

*Valencia's 42 U.S.C. § 1985(2) Claim as Stated in His First Amended Complaint* (Doc. 127)*;* and **(8)** *Plaintiff's Counter Motion for Summary Judgment* (Doc. 91). The Court having considered the Amended Complaint, motions, briefs, and the relevant law, and being otherwise fully informed, finds that Defendants' motions should be GRANTED in part and DENIED in part, and Plaintiff's motions should be DENIED.

## BACKGROUND

In the underlying action, Plaintiff Jose F. Valencia, a former Detective with the Santa Fe Police Department ("SFPD") and high-ranking member of the police officer's union, accuses Defendants the City of Santa Fe ("the City"), the SFPD, and several SFPD officers of conspiracy, civil rights violations, wrongful termination, abuse of process, defamation, and violation of state statutory laws, in connection with what he claims was an unsuccessful attempt to entrap him into committing a crime, followed by an improper internal affairs investigation and, eventually, by his termination from the SFPD.[1]

Plaintiff first came to work for the SFPD as a Patrol Officer in April 2000, and was subsequently promoted to Detective in the Juvenile Investigations Division in February 2004. Following his promotion, Plaintiff joined the Board of Directors of the Santa Fe Police Officers Association ("SFPOA"); he was eventually elected Vice President of the union in December 2006. Pursuant to his role as Vice President, Plaintiff served as the lead negotiator for the

---

[1]The Court has previously dismissed the following categories of Plaintiff's claims: (1) claims against the Individual Defendants in their official capacities; (2) claims brought against SFPD pursuant to 42 U.S.C. § 1983; (3) claim for conspiracy under 42 U.S.C. § 1985(3); (4) conspiracy claim brought under the third clause of 42 U.S.C. § 1985(2); (5) Fourth Amendment claims; and (6) claim for violation of the New Mexico Abuse of Privacy Act. *See* Docs. 109-

SFPOA's collective bargaining team, and took on duties including representing union members recommended for termination at their pre-termination hearings.

**Run-Ins With Defendants**

Over a period of two years before his termination, Plaintiff was involved in a series of incidents and/or disputes with certain Individual Defendants (Gerald Solano, Eric B. Johnson, Aric Wheeler, Gerald Rivera, Stephen Ryan, and John Does I-X) and City Defendants (the City of Santa Fe and SFPD).

*Defendant Solano*

In October 2006, Plaintiff defended union member Louis Carlos, a Detective assigned to the SFPD's Region III Multi-Jurisdictional Drug Task Force, ("Region III Task Force") from what Plaintiff characterizes as harassment by Defendant Solano, a Sergeant in the SFPD. (Doc. 1 Cplt. ¶ 37). Solano was eventually reprimanded for his conduct.

*Defendant Ryan*

In August 2007, Plaintiff served as a union representative at the pre-termination hearing of an unidentified officer recommended for termination by Defendant Ryan, a Lieutenant in the SFPD. Ryan's recommendation was subsequently overturned.

In July 2008, Plaintiff served as union representative for another officer investigated by Ryan, who recommended termination on the basis of acts the officer was ostensibly shown to have committed in video surveillance footage. The officer was terminated, and Plaintiff demanded arbitration that, he claims, brought to light the possibility the footage had been tampered with by unknown persons.

110.

***Defendant Rivera***

In December 2007, Plaintiff was assigned to investigate a stabbing incident involving the juvenile nephew of Defendant Rivera, a Lieutenant in the SFPD.  Plaintiff claims that, despite pressure from SFPD officers to arrest the other party involved in the incident, he instead referred the crime to both the Santa Fe District Attorney's Office and Juvenile Probation & Parole.  Plaintiff claims that Rivera then demanded an administrative investigation into Plaintiff's conduct.  It is undisputed that the Chief of Police declined to initiate any such investigation.

Plaintiff represented two other union members recommended for termination by Rivera at their pre-termination hearings in May and June 2008.  In both instances, Rivera's recommendations for termination were overturned by the Chief of Police.

***Defendants Johnson and Wheeler***

In December 2008, Plaintiff claims that he discovered that two SFPD Recruiting Officers, Gillian Alessio and Stephanie Rivera, were submitting falsified overtime sheets, which were being approved by Defendants, SFPD Chief Johnson and Deputy Chief Wheeler.  Plaintiff reported the alleged fraud to various City officials, including Santa Fe Mayor David Coss, which led Chief Johnson to attempt to get Plaintiff to withdraw his report.

One month later, at a SFPOA open meeting in January 2009, Plaintiff claims that he was confronted by Alessio and Rivera, who accused him of failing to protect their interests and initiated a "no confidence" vote against Plaintiff, which was unsuccessful.

***The City Defendants***

In January 2008, Plaintiff negotiated contracts for SFPOA members with the lead negotiator for the City, SFPD Capt. Gary Johnson.  Johnson submitted a tentative agreement to

Plaintiff under the terms of which union members would gradually surrender pay raises allegedly

owed to them under an existing Collective Bargaining Agreement between the City and the

Union, which was effective for the period July 1, 2007 - June 30, 2010.  When Plaintiff

submitted a counter-offer which would discontinue another program so that the pay raises could

be preserved, the Complaint alleges that Johnson and other members of the City's negotiating

team threatened him with possible retaliation.

**SFPD Informant Max Gonzales Labels Plaintiff a "Dirty Cop"**

On or about February 20, 2008, members of the Region III Task Force arrested

Maximiliano ("Max") Gonzales, a convicted felon and sometime confidential informant for State

and federal law enforcement officers, on charges of drug trafficking.  Following his arrest,

Gonzales offered to provide information on a "dirty cop" in the SFPD in exchange for a

"downward departure" from the charges he faced.  Gonzales identified Plaintiff as the officer in

question, and told arresting officers that he could obtain weapons from Plaintiff despite his

(Gonzales') status as a convicted felon.  Plaintiff and Gonzales had a prior relationship, as they

were distantly related by marriage and had worked together previously.

**FBI Investigation Into Gonzales' Allegations, February - July 2008**

On a date not set forth by the parties, the SFPD informed the FBI about Gonzales'

allegations about Plaintiff.  The FBI took up the matter for further investigation, informing SFPD

Chief Johnson at the outset that Gonzales' allegations had officially become the subject of an

FBI review.  It is undisputed that FBI Agent Nancy Duncan further instructed other unidentified

members of the SFPD about the investigation, and cautioned them not to notify anyone else

about it.

On February 22, 2008 and February 26, 2008, FBI Agent Duncan recorded a series of telephone calls from Gonzales to Plaintiff.  According to Plaintiff, various SFPD officers, including Defendant Solano and "one or more John Doe Defendants," also participated in the recording sessions.  *Id.* ¶ 74.  Plaintiff asserts that neither the officers nor Agent Duncan ever obtained a search warrant or Order of Inception to legally record the conversations.

The precise nature of what Plaintiff conveyed to Gonzales in the recorded conversations is disputed by the parties.  Plaintiff contends that he found Gonzales' request suspicious, as he knew him to be afraid of firearms.  In accordance with his training, Plaintiff claims that he attempted to gain Gonzales' confidence by use of deception, in an effort to find out why Gonzales had sought him out for the purpose of buying a firearm.  Plaintiff claims that, despite the ruse he was perpetrating, he never formed the intent to provide Gonzales with a firearm, never specifically promised to provide him with a firearm, and never committed any overt act to assist Gonzales in obtaining a firearm.  Plaintiff asserts that he followed SFPD standard operating procedure by reporting Gonzales' phone calls to his immediate supervisors.

On July 31, 2008, the FBI turned over the telephone recordings and other findings of their investigation to the SFPD.

**SFPD's Internal Investigation of Plaintiff, September 2008- July 2009**

On September 17, 2008, Defendant Rivera requested and received permission from Chief Johnson to begin an Internal Affairs investigation into Plaintiff's conduct.  The same day, Rivera informed Plaintiff that he had "been identified as the TARGET of an Administrative Investigation."  *Id.* ¶ 83.  Plaintiff alerted Chief Johnson that he was concerned that Rivera was biased against him due to their past history.  However, Johnson declined to replace Rivera on the

investigation.

Plaintiff asserts that he was not given the names of the complainants against him at the outset of his initial interview with investigating officers Rivera and Ryan.  On the contrary, Plaintiff claims that he was told that he was being investigated following a citizen complaint.  In April 2009, Rivera ordered Plaintiff to submit to a second interview, again conducted by Rivera and Ryan.

Plaintiff alleges that Rivera twice contacted him in Spring 2009 to threaten him with being charged with dishonest behavior "if he didn't begin to remember more details about his association with Max Gonzales." *Id.* ¶ 93.  Plaintiff asserts that he complied with both requests by submitting additional written statements.  Around this time, Plaintiff requested a transcript of his interrogations by Rivera and Ryan, but was rejected by the SFPD.

On June 9, 2009, the Internal Affairs investigation report into Plaintiff's alleged conduct was completed and submitted to Chief Wheeler.

**Plaintiff's First Alleged Whistleblowing Letter Raises Issue of Potential Overtime Fraud By Police Officials Including Defendants Johnson and Wheeler**

On March 12, 2009, Plaintiff, in his capacity as SFPOA Interim President, issued a letter to several Administrators of the City of Santa Fe – Mayor David Coss, Finance Director David Millican, and City Manager Galen Buller – alleging potential overtime fraud by members of the SFPD, including Defendants Johnson and Wheeler.  Plaintiff wrote:

> It is my unfortunate duty as a certified police officer and as a Union Leader to report the illegal and unethical practice of allowing employees to 'work at home,' and still get paid for it, particularly in the Police Recruiting section.  A review of the overtime sheets submitted by Sgt. Gilliam Alessio and Recruiting Officer Stephanie Rivera . . . clearly show that each of these Police Officers have been engaging in this illegal practice which amounts to overtime fraud.  The overtime sheets were signed by Eric Johnson and/or Aric Wheeler, showing that each

7

administrator acquiesced to the illegal overtime and in fact endorsed the illegal activity.

(Doc. 89 Ex. I).

## Alleged Effect of Internal Investigation on Contract Negotiations

In July 2009, Plaintiff contends that SFPD Captain Johnson and Santa Fe Assistant City Attorney Mark Allen, among others, stated to him during contract negotiations that if he conceded the 3% pay raises guaranteed to union members under the existing CBA, "he could expect to receive leniency from the city manager with respect to the then-currently ongoing internal affairs investigation and would become one of the 'darlings of the City.'" *Id.* ¶ 97. Plaintiff declined, and the pay raises went though as provided for under the terms of the CBA.

## Findings of Internal Investigation

On July 6, 2009, Chief Wheeler indicated that he concurred with the findings contained in Defendant Rivera's and Defendant Ryan's Internal Affairs investigation.  On July 22, 2009, Plaintiff was served with those findings, in which the officers sustained all allegations of misconduct against Plaintiff, and brought a new charge of criminal misconduct against him.  The same day, July 22, 2009, then-Chief Wheeler placed Plaintiff on "Alternate Duty Status" pending an administrative disciplinary hearing.

## Plaintiff's Informal Administrative Hearing

In August 2009, Plaintiff wrote to NM Law Enforcement Academy ("NM LEA") Director Art Ortiz requesting to be informed of all relevant documents and other evidence to be cited at his forthcoming disciplinary hearing.  While Ortiz denied Plaintiff's request, Plaintiff alleges that several of these documents were released to the news media.

On a date in late August or early September 2009, NM LEA Director Ortiz presided over

8

an informal hearing at the State Law Enforcement Academy.  Ortiz denied Plaintiff's request for

legal representation at the proceeding.  Plaintiff further contends that he was denied the ability to

take discovery in advance of the informal hearing, and had limits imposed on the number of

witnesses he was allowed to present in his defense.

At the conclusion of the informal hearing, NM LEA Director Ortiz recommended that

Plaintiff's police officer certification be revoked, noting that Plaintiff "did not take responsibility

for his actions."  *Id. ¶* 108.

On September 10, 2009, Plaintiff formally requested that the NM LEA Board conduct a

formal hearing into the allegations against him, and again submitted a written request to Ortiz for

access to the evidence to be used against him, which was denied.

**Plaintiff Placed on Administrative Leave; SFPD Deputy Chief Recommends Plaintiff's
Termination Based on Rivera Report**

On September 18, 2009, SFPD Chief Wheeler placed Plaintiff on paid administrative

leave, and issued a press release announcing his decision.

On October 14, 2009, SFPD Deputy Chief Robin Contreras submitted a report to Chief

Wheeler recommending Plaintiff's termination based on a review of the SFPD's Internal Affairs

investigation.

**Plaintiff's Pre-Determination Hearing**

On November 19, 2009, Chief Wheeler presided over a pre-determination hearing for the

purpose of determining whether Plaintiff should be terminated.  Plaintiff claims that he was

denied access to all evidence utilized against him at the hearing, as he was not given the right to

make a copy of the Internal Affairs file relating to the underlying investigation.  It is undisputed

that Plaintiff was represented by counsel at the hearing, though Plaintiff asserts that he was not

given the right to cross-examine witnesses called by the City.

**Plaintiff's Second Alleged Whistleblowing Letter Raises Issue of Cellular Phone Fraud**

On December 7, 2009, Plaintiff issued a letter to Chief Wheeler in his capacity as President of the SFPOA, setting forth allegations that two members of the SFPD, Mark Barnett and Allan Lopez, falsely represented themselves as President and Treasurer of the SFPOA in order to obtain a free cellular phone and contract.  Plaintiff informed Wheeler that he was forwarding his findings to the New Mexico State Police and the Attorney General's Office for further review, and concluded by "request[ing] that an administrative investigation be initiated by the Santa Fe Police Department on this matter as soon as possible."  (Doc. 89 Ex. J at 5).

**Wheeler Recommends Terminating Plaintiff**

On January 28, 2010, Chief Wheeler recommended to City Manager Robert P. Romero that Plaintiff be terminated from the SFPD.

**Plaintiff's Final Administrative Hearing**

On February 4, 2010, Hearing Officer Mark Radosevich conducted Plaintiff's final administrative hearing, for the purpose of considering whether Plaintiff's law enforcement officer certification should be revoked.  According to Plaintiff, FBI Agent Nancy Duncan testified at the hearing that, *inter alia*, Max Gonzales received a downward departure from the drug trafficking charges he originally faced in exchange for his participation in the operation that targeted Plaintiff; Plaintiff never indicated in any of the recorded conversations that he would obtain a firearm for Gonzales; Duncan was unaware of any objective evidence that Plaintiff had prior knowledge of Gonzales' felony criminal status; and Duncan's filing of a complaint against Plaintiff with the Internal Affairs division of the SFPD was at least partly based on her mistaken

belief that Plaintiff had described one or more SFPD undercover officers and the location of the Region III Task Force office to Gonzales.

**Plaintiff's Termination**

On February 12, 2010, City Manager Robert P. Romero terminated Plaintiff's employment with the SFPD.  On February 18, 2010, Plaintiff sent Romero a written demand for arbitration, pursuant to the existing CBA.  On a date not set forth by the parties, Plaintiff's arbitration demand was denied.  Plaintiff alleges that he was not allowed the opportunity to appeal the termination decision administratively.

## LEGAL STANDARD

**Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law."  *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept*., No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

**Qualified Immunity**

Because a successful qualified immunity defense "generally shields from liability for civil damages government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," special standards apply to the assessment of a summary judgment motion raising this defense. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted); *see also Hinton v. City of Elwood*, 997 F. 2d 774, 779 (10th Cir. 1993).

In analyzing a qualified immunity defense, this Court undertakes a three-part inquiry. First, the Court must determine whether the plaintiff 's allegations, if true, establish a violation of the plaintiff's constitutional rights. *Gomes*, 451 F.3d at 1134. Second, if the allegations meet that standard and the analysis continues, the Court must determine "whether the law was clearly established at the time the alleged violations occurred." *Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003). A law is deemed clearly established "if a reasonable official in the defendant's

circumstances would understand that her conduct violated the plaintiff's constitutional right."
*Gomes*, 451 F.3d at 1134.  The Tenth Circuit has provided the additional guidance that, under
ordinary circumstances, "there must be a Supreme Court or Tenth Circuit decision on point, or
the clearly established weight of authority from other courts must have found the law to be as the
plaintiff maintains," *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir. 1998),
in order for a plaintiff to demonstrate that the law was clearly established.  However, in applying
the first two prongs of the qualified immunity analysis, "[t]he judges of the district courts . . .
[are] permitted to exercise their sound discretion in deciding which of the two prongs . . . should
be addressed first in light of the circumstances in the particular case at hand."  *Pearson v.
Callahan*, 129 S. Ct. 808, 818 (2009).

Finally, if the plaintiff shows that the law is clearly established, the third and final part of
the inquiry requires the Court to consider whether, "extraordinary circumstances – such as
reliance on the advice of counsel or on a statute – so prevented the official from knowing that her
actions were unconstitutional that she should not be imputed with knowledge of a clearly
established right."  *Gomes*, 451 F.3d at 1134 (internal quotation and marks omitted).

**<u>Motion to Dismiss Under Rule 12(b)(6)</u>**

Rule 12(b)(6) provides in relevant part that "failure to state a claim upon which relief can be
granted" is a defense to a claim for relief in any pleading.  A court may dismiss a cause of action
under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff
can prove no set of facts in support of the claim that would entitle him or her to relief.  *See
Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993).  A motion to dismiss should be
granted if, viewing the well-pleaded factual allegations of the complaint as true, the complaint

does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  Thus, in considering a Rule 12(b)(6) motion, a court must assume all well pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.*,144 F.3d 1302, 1304 (10th Cir. 1998). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  However, the rules do not require a court to accept legal conclusions or unwarranted inferences.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).


**DISCUSSION**

I.      *Motion for Partial Summary Judgment No. II: Dismissal of Plaintiff's New Mexico Whistleblower Protection Act Claims*

Defendants' first motion contends that they are entitled to summary judgment on Plaintiff's claim that his termination from the SFPD violated the New Mexico Whistleblower Protection Act, NMSA 1978, §§ 10-16C-1 - 10-16C-6 (2010).  The NMWPA provides, in relevant part, that:

A public employer shall not take any retaliatory action against a public employee because the public employee:

14

A.  communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;

B.  provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or

C.  objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

NMSA 1978 § 10-18-3. A "retaliatory action" for purposes of the NMWPA means "taking any discriminatory or <u>adverse employment action</u> against  a public employee in the terms and conditions of public employment."  *Id*. at § 10-16C-2(D) (emphasis added).  An "unlawful or improper act" means a practice, procedure, action or failure to act on the part of a public employer that, *inter alia,* "violates a federal or state law, regulation, or administrative  rule" or " constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.  *Id*. at § 10-16C-2(E).

### **Plaintiff's NMWPA Claim is Appropriately Evaluated Under the Same Standard as Applies to Federal WPA Claims**

The standard under which a claim brought under the NMWPA should be evaluated has yet to be set forth by a New Mexico court in a published decision.  In support of the instant motion, Defendants offer several reasons why "the Court may rely on [f]ederal WPA case law to analyze Plaintiff's state WPA claim" (Doc. 89 at 9): (1) the legislative history of the statute, specifically the New Mexico Legislative Finance Committee's statement that the NMWPA "may be seen as a mirror to the federal law" – i.e., the federal Whistleblower Protection Act of 1989 (hereinafter, "the federal WPA") (*id.*) (quoting New Mexico Legislative Finance Committee, Fiscal Impact Report on House Bill 165, 3 (Feb. 9, 2010); (2) the plain language of the statute, which provides "an affirmative defense to a civil action brought pursuant to this section" where

the defendant public employer can show that the challenged action was due to "a legitimate business purpose" --a provision that echoes the burden-shifting framework employed for evaluating claims based on federal anti-retaliation laws including Title VII, the Americans with Disabilities Act, and the federal WPA (see NMSA 1978 § 10-16C-4(B); and (3) the fact that nine other states (including two in this Circuit) and the District of Columbia have enacted similar whistleblower protection laws that courts have analyzed under the federal WPA standard. *See* Doc. 115 at 4-5 (collecting cases).

Plaintiff responds that the question of whether the NMWPA should be interpreted under federal WPA case law "or under a different standard" should be certified to the New Mexico Supreme Court.  (Doc. 100 at 6) (citing 28 U.S.C. § 1292(b) and NMSA 1978 § 39-7-4). Plaintiff points to a legislative summary observing that "the scope of possible violations [under the NMWPA] is broad and may extend to violations of administrative rules," an activity that might not be considered protected under the federal WPA.  (Doc. 100 at 6); *see also id.* at 8 (Plaintiff noting that NMWPA "is quite clear in the rights that the New Mexico legislature established and intended for public employees to have.  The language is not anywhere near as clear in the federal act.").  Further, Plaintiff notes that the NMWPA provides an employee with the right to bring a civil suit in a court of law, and thus to bypass the various administrative forums by which a federal WPA claim must first be raised.

The Court finds that the burden-shifting analysis employed in federal WPA cases should be applied to Plaintiff's claim under the NMWPA.  While Plaintiff identifies certain differences between the state and federal statutes with regard to the scope of protected activity and the exhaustion of remedies, he does not show how these differences are relevant to the question of

16

how the underlying claims should be analyzed.  By contrast, the Court finds that both the plain

language and legislative history of the NMWPA clearly direct that the federal standard should

apply to the instant claim.  This course is further supported by unpublished authority in the

District of New Mexico, which recently applied a *McDonnell Douglas*-type burden-shifting

analysis to a claim brought pursuant to the NMWPA.  *See Lobato v. State of New Mexico*

*Environment Dept.,* Civ. No. 09-1203 (Memorandum Opinion, 7/30/12) (Doc.144 at 27) (Judge

Black finding that defendant employer was entitled to summary judgment on plaintiff's

NMWPA claim where it had shown a "legitimate, non-discriminatory reason" for terminating

plaintiff and "refuted any evidence of pretext by demonstrating that [its agents] conducted

independent investigations . . . and made sure the decision to terminate was independent from

any subordinate bias or retaliatory motive.") (not citing case law).  Thus, the Court concludes

that the instant claim should be analyzed under the same standard as applies to a federal WPA

claim.

Accordingly, in the absence of any direct evidence of retaliation, Plaintiff can carry his

summary judgment burden by presenting circumstantial evidence creating an inference of

discriminatory intent, using the three-part burden-shifting framework employed by the Supreme

Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under the

*McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of

protected whistleblowing, then (2) the burden shifts to the defendant employer to articulate a

legitimate, non-discriminatory reason for having made adverse employment decisions regarding

the plaintiff.  If the defendant meets its burden, all presumptions of retaliation are dropped, and

(3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the

defendant's proferred reasons for the allegedly retaliatory actions are merely a pretext for retaliatory discrimination. *See McDonnell Douglas,* 411 U.S. at 802-805 (1973); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

Defendants contend that they are entitled to summary judgment because Plaintiff cannot establish a prima facie case for retaliation, and that even if could do so, he cannot meet his burden of demonstrating that Defendants' legitimate reasons for terminating him are merely a pretext for retaliation.

### Plaintiff's Prima Facie Retaliation Case

To establish a prima facie case for retaliation under the federal WPA – and, thus, under the NMWPA – Plaintiff must show by a preponderance of the evidence that (1) he made a protected disclosure, (2) he was subjected to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Wells v. Shalala,* 228 F.3d 1137, 1147 (10th Cir. 2000). For purposes of the instant motion, Defendants do not dispute that two letters written by Plaintiff in March and December 2009 – detailing allegations of overtime fraud and fraudulent activation of a cellular phone contract by SFPD officers, respectively – constitute disclosures of protected information within the meaning of the NMWPA. *See supra*. Further, Defendants do not dispute that Plaintiff's termination in February 2010 constitutes an adverse employment action under the statute. Thus, Defendants' position that Plaintiff cannot establish a prima facie retaliation claim rests solely on the premise that Plaintiff cannot show a causal link between his protected disclosures and his termination.

A causal link may be established with "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."

18

*Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982).  However, "[u]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)*; see also Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) ("if the only evidence of causation is a temporal relationship, then the adverse action must occur closely following the protected activity. . . an adverse employment action that happened more than three months after the protected activity [is] not entitled to a presumption of causation").

In his response, Plaintiff fails to apply the federal standard for analyzing a whistleblowing claim, including by identifying any of the protected activities that he claims led to his termination.[2]  Accordingly, the Court analyzes only those protected activities identified by Defendants – Plaintiff's March 2009 letter alleging potential overtime fraud by members of the SFPD and his December 2009 letter alleging that other SFPD officers had fraudulently activated a cellular phone contract for their personal use.

The record shows that Plaintiff's termination in February 2010 came eleven months after his March 2009 letter and approximately two-and-a-half months after his December 2009 letter. Defendants argue that Plaintiff cannot avoid summary judgment solely by pointing to the period

---

[2]Plaintiff's response brief is almost exclusively devoted to his argument that a burden-shifting analysis should not be applied to an NMWPA claim, absent a directive from the New Mexico Supreme Court. While the final two pages of his brief raise and abandon several points – including that the allegations contained in Plaintiff's whistleblowing letters are supported by disclosures made in this case; that New Mexico courts "define on a case-by-case basis violations of public policy in retaliatory discharge suits," (Doc. 100 at 16) (quotation omitted); and that the conduct by an employee which gives his employer just cause to terminate him is likewise determined on a case-by-case basis – Plaintiff fails to explain the significance of any of

between his second letter and his firing, when his termination was the culmination of an Internal Affairs investigation that began six months before Plaintiff's first whistleblowing letter, in September 2008. "By December 2009 . . . the Chief of Police had indicated that he concurred with the Internal Affairs report, Plaintiff's termination had been formally recommended by the Deputy Chief of Police, and Plaintiff had already received a pre-determination hearing." (Doc. 89 at 14).

While New Mexico courts have declined to "adopt a specific time period for inferring facts related to causation," they have cited Tenth Circuit precedent that "a three-month period without additional facts would not be sufficient to establish causation." *Juneau v. Intel Corp.,* 139 N.M. 12, 20 (2006) (denying summary judgment on causation where "temporal proximity is only one piece of the evidentiary formulation offered by Plaintiff") (citing *Richmond v. ONEOK*, Inc., 120 F.3d 205, 209 (10th Cir. 1997)).

By failing to offer a substantive response to Defendants' motion, Plaintiff necessarily fails to proffer any proof of a causal connection between his protected activities and eventual termination, based on temporal proximity or other facts in issue. The Court thus finds that Plaintiff fails to show the existence of a genuine factual dispute as to whether he can state a prima facie claim under the NMWPA. Accordingly, because Plaintiff fails to present sufficient specific evidence from which a jury could conclude that he had established a prima facie case, the Court need not proceed to consider whether the remaining prongs of the *McDonnell Douglas* test are satisfied.

Thus, the Court finds that Defendants' motion for summary judgment on Plaintiff's

---

these points to his summary judgment burden.   20

NMWPA claim should be granted.

II.     *Motion for Partial Summary Judgment No. III: Dismissal of Plaintiff's Abuse of Process and Illegal Entrapment Claims*

Next, Defendants contend that they are entitled to summary judgment on Plaintiff's tort

claims for abuse of process and illegal entrapment under § 1983.

**Plaintiff's Claim for Abuse of Process**

Count V of Plaintiff's Complaint asserts a tort claim for abuse of process.  In New

Mexico, the formerly separate torts of malicious prosecution and abuse of process have been

restated as a single cause of action known as malicious abuse of process.  *See Weststar Mortg.*

*Corp. v. Jackson*, 133 N.M. 114, 119 (N.M. 2002).  In order to assert a claim for malicious

abuse of process, the following elements must be present: (1)  use of process in a judicial

proceeding that would be improper in the regular prosecution or defense of a claim or charge;

(2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.

*Durham v. Guest*, 145 N.M. 694, 701 (2009).

Defendants argue that summary judgment should be granted because Plaintiff cannot

establish the first element of a State law malicious abuse of process claim by setting forth a

"judicial proceeding" whose process Defendants allegedly abused.  Specifically, Defendants

maintain that none of the following would-be "judicial proceedings" identified by Plaintiff in

his Complaint and Interrogatory Responses meets the definition of a judicial proceeding under

New Mexico law: (1) the "disciplinary administrative proceedings" that Defendants instituted

against Plaintiff in order to illegally entrap him (Doc. 90 at 14) (citation omitted); (2)

21

Defendants' handling of the Internal Affairs investigation that culminated in Plaintiff's termination, (3) Defendants' failure to notify Plaintiff that he was under investigation by the FBI in February 2008, and (4) Defendants' release of the Internal Affairs report to the U.S. Attorney's Office and the New Mexico Department of Public Safety.  Defendants note that the New Mexico Supreme Court has "limited the expansion of the term 'judicial proceeding' to include only legal proceedings before a court or contractual arbitration proceedings."  *Id*. at 13 (citing *Durham*, 145 N.M. at 702-03) (expanding definition of "judicial proceeding" to include arbitrations on grounds that "New Mexico has specifically determined that arbitration is an acceptable form of dispute resolution" and "the processes that are susceptible to abuse in both the civil judicial system and arbitration proceedings are governed by similar rules," including with respect to an arbitrator's ability to issue subpoenas, discovery orders, and protective orders, compel witness attendance and document production, and take action against non-complying parties); *see also* NMRA, Civ. UJI 13-1637 (Uniform Jury Instruction for malicious abuse of process, defining "judicial proceeding" as "a criminal prosecution, a civil lawsuit, or an arbitration proceeding.").

Plaintiff responds that a question of material fact exists as to whether the "disciplinary administrative proceeding" at issue is a "judicial proceeding" for the purpose of establishing a claim for malicious abuse of process, citing various provisions of Section 35 of the CBA in place at the time, titled "Grievance and Appeal Procedures."[3]

---

[3]Because Plaintiff fails to respond to Defendants' argument that their Internal Affairs investigation and alleged release of the Internal Affairs report do not constitute "judicial proceedings" within the meaning a malicious abuse of process claim, Plaintiff's claim is waived with respect to these allegations.

The Court finds, as a matter of law, that Plaintiff's administrative disciplinary hearing does not constitute a judicial proceeding for purposes of establishing a malicious abuse of process in New Mexico. Plaintiff attempts to rely on the quasi-judicial procedures described in Section 35 of the CBA – which provides a "formal grievance procedure" for an arbitration proceeding conducted *after* an employee's post-termination appeal – and suggests that these procedures applied to his own pre-termination proceeding. *See* Doc. 99 at 11 (citing Ex. 1, CBA at 38, 40, 43-45) (omitting pages from Exhibit showing that CBA provisions describing decisionmaker as "arbitrator" and decision as "final and binding" actually pertain to Section 35, "Grievance and Appeal Procedures," rather than Section 34, "Disciplinary Action," which expressly provides for a pre-termination proceeding to be "informal" and presided over by the Chief of Police as representative of the employer). However, the record indicates that the only disciplinary proceeding at issue in this case[4] was an informal hearing conducted by Defendant Chief Wheeler on November 19, 2009, three months prior to Plaintiff's termination. *See* Doc. 122, Am. Cplt. ¶¶ 113-114; *see also* Doc. 112 Ex. B at 6-7 (Plaintiff's complaint against SFPOA in separate State court action, alleging "breach of duty to represent" him by failing to seek a post-termination arbitration on his behalf).

Therefore, because Plaintiff fails to show the first element of a malicious abuse of process claim by alleging the misuse of process in a judicial proceeding, the Court finds that

---

[4]While the Complaint also describes in some detail a February 4, 2010 administrative proceeding held for the purpose of considering whether Plaintiff's law enforcement certificate should be revoked, it does not set forth any claims concerning the subsequent decision to revoke Plaintiff's certification, and in any event, that proceeding was also an informal administrative hearing held prior to Plaintiff's February 12, 2010 termination. *See* Doc. 122, Am. Cplt. at 20 n.1.

summary judgment should be granted to Defendants on the instant claim.

**Plaintiff's Claim for Illegal Entrapment**

Defendants further seek summary judgment on what they infer from Plaintiff's Complaint to be his possible claim for illegal entrapment under § 1983.  In his response brief, Plaintiff clarifies that he does not assert a separate claim for illegal entrapment.  (Doc. 99 at 14). The Court will thus deny the portion of Defendants' motion relating to Plaintiff's illegal entrapment claim as moot.

**III.**      ***Plaintiff's Motion to Summarily Deny (Or in the Alternative, Strike) Defendants': (1) Daubert Motion to Exclude Robert Romero;[5] (2) Motion for Partial Summary Judgment No. IV; and (3) Motion for Partial Summary Judgment No. V***

Plaintiff does not offer a substantive response to any of the arguments raised in Defendants' next two motions for summary judgment, Nos. IV and V.  *See infra.*  Rather, Plaintiff moves the Court to deny these motions on procedural grounds, arguing that the motions were filed one day after the Court's pre-trial motions deadline and that Defendants made no attempt to comply with D.N.M.LR-Civ- 7.1 by seeking to determine whether the motions were opposed by Plaintiff.

Defendants deny that summary judgment motions No. IV and V are untimely, noting that the motions deadline fell on a federal holiday – Presidents' Day, February 18, 2013 – and that the clerk's minutes for the Court's July 9, 2012 scheduling conference plainly state that "any due date falling on a weekend or Court holiday will be extended to the next work day of

---

[5]Because the Court finds that Defendants are entitled to summary judgment on Plaintiff's remaining claims, *see infra*, Defendants' motion to exclude the testimony of Mr.

the Court." (Doc. 25 at 1). Defendants note that, in an abundance of caution, their counsel asked the chambers of the assigned magistrate judge if the one-day holiday extension was applicable to the motions in issue, and was directed to the cited provision of the clerk's minutes by way of confirmation. Because the Court finds that the pre-trial motions deadline was indeed February 19, 2013, the Court will deny Plaintiff's motion to deny summary judgment motions Nos. IV and V on timeliness grounds.

       With regard to Plaintiff's contention that Defendants shirked their duty under the Local Rules to seek concurrence as to motions No. IV and V, Defendants note that their counsel was explicitly informed by Plaintiff's counsel "just weeks prior to Defendants' filing the motions in question, that such a request for concurrence was unnecessary because opposition could be assumed." (Doc. 105 at 2). Defendants proffer a January 24, 2013 e-mail chain between Defendants' counsel, Luis Robles, and Plaintiff's attorney, Charles Lakins, in which Robles sought to clarify whether an earlier e-mail from Lakins provided Defendants with permission to "file all of their 'pending' and 'future' motions without first submitting those motions to you . . . to determine of you concur with the motion," and Lakins responded that "you can operate on the presumption that all motions for summary judgment will be opposed." (Doc. 105 Ex. 3). Plaintiff asserts that the proffered e-mails constitute "(mis)communications" that did not obviate Defendants' need to make a good-faith request for concurrence. (Doc. 120 at 2). Plaintiff does not explain how Lakins' words were misinterpreted by Defendants or cite to any case law in which a court declined to accept a party's waiver of an opposing party's obligation to seek concurrence. Because the Court finds that Robles explicitly sought and received Plaintiff's

Romero is denied as moot.

counsel's permission to file the motions in issue without seeking concurrence, this portion of Plaintiff's motion will likewise be denied.

Accordingly, the Court finds that Plaintiff's motion to summarily deny or strike Defendant's motions No. IV and V should be denied.

**IV.** *Defendants' Motion for Partial Summary Judgment No. IV: Dismissal of Plaintiff's Wrongful Termination and Defamation Claims*

Defendants' fourth motion seeks summary judgment on Plaintiff's claims for wrongful termination and defamation. As noted above, Plaintiff does not offer a substantive response to the arguments raised in the instant motion. Pursuant to D.N.M.LR-Civ. 7.1(b), "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." Moreover, Defendants meet their initial burden of showing the absence of a question of material fact with respect to both of the claims in issue, which Plaintiff, by declining to respond, fails to overcome.

**<u>Plaintiff's Claim for Wrongful Termination</u>**

With regard to Plaintiff's claim for wrongful termination, the general rule in New Mexico that an employment contract is terminable at will has "'two exceptions,'" including the one relevant here – "'wrongful discharge in violation of public policy (retaliatory discharge).'" *Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 731 (1996). New Mexico courts created the tort of wrongful discharge or termination "as a means of redress for the very limited situation in which an employee has no other means of protection against an employer's breach of public policy." *Ruby v. Sandia Corp.*, 699 F. Supp. 2d 1247, 1267 (D.N.M. 2010). If

26

another remedy is provided by law, "either because of an employment contract or through another cause of action, the tort is unnecessary and will not be recognized."  *Id.*

Defendants contend that Plaintiff's claim for wrongful termination – *aka* wrongful discharge or retaliatory discharge –  must fail because he was not an at-will employee.  They cite *Silva v. Am. Fed'n of State, County & Mun. Employees,* 131 N.M. 364, 366 (2001), in which the New Mexico Supreme Court held that, because a wrongful discharge claim's "genesis and sole application has been in regard to employment at-will, it is unnecessary and inapplicable when the employee is protected from wrongful discharge by an employment contract." (marks omitted); *see also Back v. Conoco Phillips Co.*, 2012 U.S. Dist. LEXIS 184392, at *50 (D.N.M. Aug. 31, 2012) ("A retaliatory discharge claim is available only to at-will employees, because such a provision is unnecessary when a contract protects the employee.").  In support of their position, Defendants proffer the undisputed evidence that the CBA governing Plaintiff's employment relationship with the City "included a provision stating that disciplinary actions must be based on a showing of cause," and set forth a grievance procedure in the event of an employee's demotion or termination.  (Doc. 94 at 10) (citations omitted).

In failing to offer a substantive response to the instant motion, Plaintiff fails to meet his own burden of showing a genuine issue of material fact as to whether he can assert a triable claim for wrongful termination.  Accordingly, the Court finds that summary judgment should be granted to Defendants on Plaintiff's wrongful termination claim.

### Plaintiff's Defamation Claim Against Defendants Solano, Rivera, and Wheeler

In New Mexico, the tort of defamation is defined as a "wrongful injury to a person's

27

reputation." *Smith v. Durden*, 276 P.3d 943, 950 (N.M. 2012) (citing NM UJI 13-1002).  Under New Mexico law, the elements of defamation include (1) a publication by the defendant (2) of an asserted fact (3) which is defamatory, (4) communicated to a third person, (5) of and concerning the plaintiff, (6) and proximately causing injury to the plaintiff.  *See Newberry v. Allied Stores*, 108 N.M. 424, 429 (1989); *see also* UJI 13-1002(B) (setting forth elements comprising a prima facie case of defamation).

Plaintiff's First Amended Complaint does not identify the allegedly defamatory communications that he claims Defendants made about him.  *See* Doc. 122 Am. Cplt. ¶¶ 242-243 (asserting generally that "Defendant made defamatory communications" and provided them "to third party news media outlets" and "members of multiple law enforcement agencies" that subsequently published them, and that the communications "were of an asserted fact").  Although Plaintiff does not limit his claim to any Defendant(s) in the Amended Complaint, he clarifies in his discovery responses that he means to assert a claim against individual Defendants Solano, Rivera, and Wheeler.  *See* Doc. 94 Ex. C at 48-50 ¶¶ 10(B) and 10(E).  The Court takes up Defendants' argument that each of these Defendants is entitled to summary judgment in turn.

### *Defendant Solano*

Defendants contend that summary judgment should be granted to Solano because Plaintiff failed to identify the defamatory communication(s) Solano allegedly made about him when asked point-blank about them during discovery.  They note that in their first set of production requests – which sought all documents and statements supporting the instant claim – Plaintiff discussed defamatory statements made by only Wheeler and Rivera, asserting that he did "not claim that [ ] Solano defamed him in the manner described and set forth in paragraphs

28

[242 and 243] of the [Amended] Complaint."  (Doc. 94 at 12) (citing Ex. C at 47-48).  Rather, Plaintiff linked his claim against Solano to another paragraph of the Complaint, which did not refer to any allegedly defamatory statements, only the "humiliation, mental anguish, and harm to Plaintiff's [r]eputation" caused by them.  *Id.*  While Defendants indicate that Plaintiff subsequently ascribed unspecified "defamatory actions" to Solano in his interrogatories and deposition, they maintain that he at no point specified any published statement by Solano that was defamatory.

The Court finds that Defendants meet their initial burden of showing an absence of evidence supporting Plaintiff's claim against Solano.  Indeed, the Court has not been directed to any evidence in the summary judgment record setting forth the basis for the instant claim.  For example, in Plaintiff's interrogatory responses, he asserts that Solano made defamatory statements about him to nine named officers of the SFPD, but fails to offer any information about the nature of the statements or how they defamed him.  *See* Doc. 94 Ex. C at 47.  Because Plaintiff fails to set forth evidence showing the existence of a factual dispute as to whether Solano defamed him, the Court finds that Solano should be granted summary judgment on Plaintiff's defamation claim.

### *Defendant Rivera*

In his interrogatory responses, Plaintiff asserts that Defendant Rivera defamed him in his 400-page Internal Affairs report, which detailed the findings of his and Defendant Ryan's investigation, sustained all allegations of misconduct against Plaintiff, and brought a new charge of criminal misconduct against him.  According to Plaintiff, Rivera used the report to "exacerbate the allegations of misconduct brought against me" and "minimize the exculpatory

evidence," before releasing it to law enforcement bodies including the New Mexico Law

Enforcement Academy Board, who, in turn, released the report to the local media.  (Doc. 94 Ex.

C at 49).   While Plaintiff does not specify any particular defamatory statement in the report, he

lists four general conclusions that appeared therein that he alleges defamed him:

> 1.  That I was not forthcoming in my interviews with him.
>
> 2.  That I committed a criminal act.
>
> 3.  That I was in fact a 'dirty cop.'
>
> 4.  That my answers were not consistent with legally obtained evidence gathered during his investigation, hence that I was dishonest in answering questions during the investigation.

*Id.* at 49-50.  Plaintiff does not quote or cite to the portions of the report in which the four

summarized "statements" appear.

Defendants contend that Rivera is entitled to summary judgment on the instant claim

because the above-summarized observations were merely his own opinions "regarding whether

certain charges were supported based on a review of the evidence."  (Doc. 94 at 16).

Defendants note that it is well-established that "'an action for defamation lies only for false

statements of fact and not for statements of opinion.'"  *Id.* at 15 (quoting *Mendoza v. Gallup

Indep. Co.*, 107 N.M. 721, 723 (Ct. App. 1988)); *see also Marchiando v. Brown,* 98 N.M. 394,

404 (1982).  According to Defendants, Rivera's report "describ[ed] in great detail the evidence

on which he relied in forming his opinion and the basis on which he made his determinations"

and disclosed the methodology he employed in forming his conclusions, thus allowing the

reader to draw his or her own conclusions as to Plaintiff's purported misconduct.  *Id.* at 16-17.

*See Andrews v. Stallings,* 119 N.M. 478, 486 (Ct. App. 1995) ("Statements recognizable as

opinion because the factual premises are fully revealed are not a proper predicate for a defamation claim"). While the report does not appear in the record in its entirety, Defendants proffer SFPD Deputy Chief's Robin Contreras' disciplinary recommendation to Chief Wheeler, which reproduces a 20-page portion of the report verbatim. *See* Doc. 89 Ex. F at 3-23. The proffered excerpt is organized by charge, with Rivera's finding as to the charge and the evidence justifying his conclusions listed below. *See, e.g., id.* at 11 (Rivera recounting how Plaintiff provided informant Garcia with a description of a law enforcement officer investigating Garcia in recorded conversation between them, how this was "extremely dangerous" to the officer described, and how, even "[i]f he was just making up a description . . . it gives the impression that [Plaintiff] . . . cannot be trusted (is a 'dirty' cop) and *that* brings the department into disrepute").

By failing to respond to the arguments set forth in the instant motion, Plaintiff fails to meet his own burden of proffering evidence that the (unspecified) challenged portions of Rivera's report were not merely statements of opinion. Equally important, there is no indication in the record that Plaintiff has identified with specificity those of Rivera's statements that he claims to be defamatory. Accordingly, the Court finds that summary judgment should be granted to Rivera on the instant claim.

### Defendant Wheeler

The Court finds that summary judgment on the instant claim should likewise be granted to Defendant Wheeler. Plaintiff notes in his interrogatory responses that Wheeler defamed him by issuing press releases "regarding my Internal Affairs  investigation[,] which was clearly a personnel matter." (Doc. 94 Ex. C at 48). Plaintiff fails to specifically identify or quote the

31

language in the press release[s] that defamed him, and instead appears to assert that the very act of making a statement to the media about his placement on administrative leave and/or eventual termination defamed him.  *See* Doc. 94 Ex. E (Jan. 28, 2010 article in the Santa Fe New Mexican describing how Wheeler confirmed Plaintiff's placement on modified duty and administrative leave and "declined to comment further, citing rules that forbid releasing details about personnel issues").  As Plaintiff himself has stipulated to the facts that he was placed on leave during the Internal Affairs investigation and subsequently terminated, any statement by Wheeler confirming these facts would fail to satisfy the requirement that a defamatory statement be false.

Further, Plaintiff's discovery responses indicate that he partly bases his claim on Wheeler's authorizing "the release of components of said IA investigation" to the New Mexico Law Enforcement Academy Board, pursuant to which he apparently endorsed the conclusions contained in Defendant Rivera's Internal Affairs report.  *See id.* Ex. C at 48 (Plaintiff generally summarizing Wheeler's allegedly defamatory conclusions "[t]hat I agreed to sell a gun to a known drug dealer and a convicted felon" and "[t]hat I was dishonest in my statements during the IA investigation" without quoting the allegedly defamatory language or specifically identifying any of the challenged statements).  Again, because Plaintiff fails to meet his summary judgment burden by (1) identifying the allegedly defamatory statements and (2) proffering evidence that they were statements of fact, rather than his personal opinions, the Court finds that Wheeler is entitled to summary judgment on Plaintiff's defamation claim.


**V.**      ***Defendants' Motion for Partial Summary Judgment No. V: Dismissal of Plaintiff's***

***Remaining Claims Brought Pursuant to 42 U.S.C. § 1983***

Defendants' fifth motion seeks summary judgment on Plaintiff's "remaining claims

brought pursuant to 42 U.S.C. § 1983" as set forth in Count I of his Complaint, the Court having

previously dismissed all of Plaintiff's Count I claims against the SFPD,  his Count I claims

against all Defendants for violation of the Fourth Amendment, and his Count I claims against all

Defendants for violation of the New Mexico Abuse of Privacy Act.  (Docs. 109-110).

Defendants observe that Plaintiff's Count I "raises a myriad of civil rights and due process

claims related to the internal investigation undertaken against him by the SFPD and the rights

he was afforded prior to termination," which they have sought to clarify on discovery.  (Doc. 95

at 2); *see also* Doc. 122 Am. Cplt. "Count I: 42 U.S.C. § 1983," ¶¶ 121-165.   Defendants now

move for summary judgment on Plaintiff's remaining Count I claims for § 1983 relief as

identified in his interrogatory responses.

## Plaintiff's Claim That Defendants' Lack of Intervention in the FBI Investigation Violated His Constitutional Rights

First, Plaintiff claims that Defendants violated his constitutional rights by acquiescing to

the FBI's illegal attempt to entrap him into committing a crime.  Defendants proffer Plaintiff's

interrogatory responses stating that his constitutional rights were violated when they allowed the

FBI to proceed without a warrant supported by probable cause, failed to notify Plaintiff that he

was the target of an FBI investigation, and permitted others – including "very likely" Defendant

Solano -- to join the FBI in its "entrapment" operation.  (Doc. 95 at 10-11) (citing Doc. 95 Ex.

E; Ex. F at 13, 14, 18, 30, 33).  Defendants argue that Plaintiff's claim must fail because he

cannot demonstrate that they were constitutionally required to stop the FBI investigation or to

33

notify Plaintiff of the FBI's investigation, particularly as Defendants have raised a qualified

immunity defense, which requires Plaintiff to show that their (unidentified) constitutional

obligation was clearly established at the time of the challenged conduct.  (Doc. 95 at 11).  They

note that FBI Agent Duncan testified that she specifically ordered SFPD command officers not

to inform anyone about the investigation, so that it "was objectively reasonable for Defendants

to 'allow' the FBI investigation to proceed and to not inform Plaintiff of the ongoing

investigation."  *Id.* at 11 (citation omitted); *see also Gomes,* 451 F.3d at 1134.

By declining to offer a substantive response to the instant motion, Plaintiff fails to set

forth evidence tending to show that Defendants' actions with respect to the FBI investigation

constitute constitutional violations sufficient to defeat a qualified immunity defense.

Accordingly, the Court finds that summary judgment should be granted to Defendants on the

portion of the instant motion related to these allegations.

### Plaintiff's Claim That SFPD's Internal Affairs Investigation Violated His Constitutional Rights

Next, Defendants point to Plaintiff's discovery responses indicating that his

constitutional rights were violated  by (1) Defendants' knowing use of illegally obtained FBI

recordings as evidence against Plaintiff in their Internal Affairs investigation; (2) Defendants'

conducting a criminal investigation, rather than an administrative one, and not advising Plaintiff

as to the nature of the investigation; (3) Defendants' failure to comply with procedural

requirements set forth in the Peace Officer's Employer-Employee Relations Act, NMSA 1978 §

29-14-1, et seq., ("POERA"), and the SFPD's own Standard Operating Procedures; and (4)

Defendants' depriving him of constitutionally adequate process at his pre-determination hearing

or subsequent to his eventual termination, by denying him the right to appeal.

### 1. Defendants' Use of the FBI Recordings

With regard to Defendants' reliance on the allegedly illegal FBI telephone recordings, the Court observes that it has previously granted summary judgment on Plaintiff's claim that the making of the recordings violated his rights under the Fourth Amendment and the New Mexico Abuse of Privacy Act. *See* Doc. 110. By failing to respond to the instant motion, Plaintiff not only fails to assert an alternate basis for the alleged illegality of the recordings, he also fails to identify which of his constitutional rights were violated by Defendants' subsequent use of the recordings in their own investigation. Accordingly, the Court finds that summary judgment should be granted to Defendants on this portion of the instant claim.

### *2.* Failure to Advise Plaintiff of "Criminal Investigation"

With regard to Defendants' alleged failure to inform Plaintiff that their investigation was of a criminal nature, rather than an administrative one, Plaintiff's discovery responses indicate that he claims that this omission violated his rights under the Sixth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). (Doc. 95 Ex. F at 17). In support of summary judgment, Defendants contend that Plaintiff cannot set forth any evidence that he *was* the subject of a criminal investigation by the SFPD. *See* Doc. 95 at 14 (quoting letter to Plaintiff notifying him he was the target of an administrative investigation and asserting that any disclosures he made as part of the investigation "will not be used against you in any criminal proceeding") (citation omitted). Defendants further contend that there is no evidence in the record supporting Plaintiff's allegation that they urged the U.S. Attorney to prosecute him, nor any evidence that the factual allegations in this case relate in any way to *Miranda*, which "simply established that

the Fifth Amendment prohibits prosecutors from introducing, as part of a criminal prosecution, statements obtained from a defendant during a custodial interrogation, unless the defendant was first warned of his right to have counsel present." *Id.* at 15.

By failing to respond to the instant motion, Plaintiff fails to set forth any evidence showing that he has asserted a triable claim on the asserted grounds. Accordingly, the Court finds that summary judgment should be granted to Defendants on this portion of the instant claim.

### 3. Failure to Comply With Procedural Requirements

Next, Plaintiff claims that Defendants' failure to comply with procedural requirements set forth in the POEERA and the SFPD's Standard Operating Procedures – including the requirement that an Internal Affairs investigation be completed within 90 days – constitutes a due process violation(s). Neither party sets forth a full listing of the requirements that Defendants allegedly failed to meet. In support of the instant motion, Defendants argue that, even assuming *arguendo* that they failed to satisfy certain procedural requirements governing Internal Affairs investigations, Plaintiff cannot establish that they were required to do so under the U.S. Constitution. "[I]t is well-established that a failure to follow state or local procedural requirements does not, by itself, constitute a denial of due process; it is only if such a failure results in a procedure that falls short of federal due process standards that a plaintiff can establish a constitutional violation." (Doc. 95 at 16) (citing *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998)).

By failing to offer a substantive response to the instant motion, Plaintiff fails to meet his

burden of showing that Defendants' alleged violations of state and local procedural requirements constituted a clearly-established federal due process violation.  Accordingly, the Court finds that Defendants are entitled to summary judgment on this portion of the instant motion.

### 4.  Failure to Provide Plaintiff With Due Process With Regard to His Pre-Determination Hearing and Attempted Appeal

Finally, Plaintiff claims that Defendants deprived him of his right to due process by refusing him access to certain evidence required to prepare for his pre-determination hearing; denying him the right to cross-examine witnesses at the hearing; and denying him the right to appeal his subsequent termination via arbitration, in direct violation of the CBA governing his employment.  Defendants argue in support of the instant motion that they provided Plaintiff with constitutionally adequate process at all relevant times.

With regard to Plaintiff's pre-determination hearing, Defendants contend that all that was required of them, in order to ensure that Plaintiff received constitutionally adequate process, was to provide him with "'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" (Doc. 95 at 18) (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 570 n.7 (1972) ("due process requires that when a State seeks to terminate [a protected] interest . . . , it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective") (marks omitted); *Henning,* 155 F.3d at 1256 ("a plaintiff is not entitled to an extensive or formal pre-termination hearing").

37

Defendants proffer evidence that the "minimal requirements" established by *Loudermill* are echoed in the Santa Fe City Personnel Ordinances and CBA that governed Plaintiff's pre-determination hearing.  (Doc. 95 at 18); *see* City Personnel Ordinance § 7.50(G)(1) (1987) (providing that a public employee at risk of being terminated receive notification of the pending termination action, including the basis of the contemplated termination; a general explanation of the City's supporting evidence; the date, time, and location of his pre-determination hearing; an opportunity to respond to the allegations against him; and the right to be represented at the hearing; *see also* Doc. 95 Ex. H at 42 (CBA provision that an SFPD employee facing possible termination had the right to an "informal" pre-determination hearing for the purpose of "provid[ing] the employee with a reasonable opportunity to address the reasons for the proposed disciplinary action.").

In support of the instant motion, Defendants note the undisputed facts that Plaintiff received notice of his pre-determination hearing; that he was given an opportunity to review his Internal Affairs file prior to the proceeding (though admittedly, not the right to make a copy if its contents); and that he in fact participated in the hearing, at which he was represented by counsel.

By failing to respond to the instant motion, Plaintiff fails to meet his burden of showing how the only challenged conduct identified in the summary judgment record – Defendants' denying him the right to make a copy of his Internal Affairs file and cross-examine witnesses at his pre-determination hearing – constitute violations of his clearly-established due process rights.  Accordingly, the Court finds that summary judgment should be granted to Defendants on this portion of the instant claim related to his pre-determination hearing,

With regard to Plaintiff's attempted arbitration appeal, Defendants contend that Plaintiff "had access to a full, formal post-termination grievance process, which he did not take advantage of," opting instead to pursue an improper arbitration appeal without the necessary involvement of the SFPOA.  They point to City Personnel Ordinance § 7.50(G)(5)(e), which would have given Plaintiff the right to a "full post-termination hearing before an outside hearing officer" – had he elected to file a written appeal of the City Manager's final termination decision.  (Doc. 95 at 20).  There is no evidence in the summary judgment record that Plaintiff filed such an appeal.  Rather, Defendants proffer evidence that Plaintiff filed a written demand for arbitration and formal request for a panel of arbitrators under Sections 34 and 35 of the CBA, which states that "[i]f the association" – i.e., the SFPOA – "is dissatisfied with the decision of the City Manager with regards to . . . terminations, it may appeal the decision by serving a written demand for arbitration pursuant the Arbitration provision of Section 35." (Doc. 95 Ex. H at 42), *cf. id.* ("an employee dissatisfied with the decision of the City Manager with regards to a disciplinary action other than suspensions, demotions or *terminations* may appeal the decision at cost to the employee by serving a written demand for arbitration pursuant to the Arbitration provision of Section 35") (emphasis added).  Thus, according to Defendants, summary judgment should be granted because Plaintiff's claim rests on the faulty premise that he was entitled to a process that did not apply to employees in his situation.

By failing to respond to the instant motion, Plaintiff fails to meet his burden of showing that his clearly-established due process rights were violated by Defendants' denying his attempted arbitration appeal.  Accordingly, the Court finds that summary judgment should be granted to Defendants on this remaining portion of Plaintiff's § 1983 claim.

**VI.**   *Defendants' Motion to Strike Plaintiff's Untimely-Filed First Amended Complaint*

In its March 18, 2013 Memorandum Opinion and Order, the Court denied Defendants' motion to dismiss Plaintiff's claim for conspiracy under the fourth clause of 42 U.S.C. § 1985(2), and allowed Plaintiff 15 days from the date of its Opinion to amend the Complaint to assert a claim under that clause.[6]  (Doc. 109 at 20).  The Court held that Plaintiff's failure to amend his Complaint by the deadline would result in dismissal of the instant claim without prejudice.  Defendants now move to strike Plaintiff's First Amended Complaint on the ground that it is untimely, having been filed two days after the Court's deadline.  *See* Doc. 125 at 2-3 ("in computing a due date when a period . . . is stated in days, the day of the event that triggers the period should be excluded, but every day of the period should be counted, including weekends and legal holidays. . . .") (citing Fed. R. Civ. P. 6(a)(1)).  Plaintiff fails to respond to the instant motion, or to seek an extension of time in which to do so.

Because the Court prefers to reach the merits of Defendants' pending *Motion to Dismiss No. II: Dismissal of Valencia's 42 U.S.C. § 1985(2) Claim as Stated in His First Amended Complaint* (Doc. 127), filed in the alternative to the instant motion, *see infra*, the Court will deny Defendants' motion to strike as moot.

**VII.**   *Defendants' Motion to Dismiss No. II: Dismissal of Valencia's 42 U.S.C. § 1985(2)*

---

[6]In permitting amendment, the Court found that Plaintiff's failure to put Defendants on notice that he meant to assert a conspiracy claim under the "enforcement clause" of § 1985(2) to be a deficiency mandating dismissal.  However, the Court notes that Plaintiff's enforcement claim was otherwise supported by facts in the Complaint, and thus allowed him to cure the deficiency.  *See* Doc. 109 at 13-15.

***Claim as Stated in His First Amended Complaint***

As described, *supra,* the Court previously allowed Plaintiff to amend his Complaint for the limited purpose of asserting a conspiracy claim under the fourth clause of § 1985(2) ("the enforcement clause").  Defendants move to dismiss the updated § 1985(2) claim set forth in Plaintiff's First Amended Complaint on the grounds that it still fails to invoke the elements of an "enforcement" claim, let alone link those elements to Plaintiff's factual allegations, and in fact appears to plead a claim under a different clause of § 1985(2) – the "deterrence" clause – even after the Court dismissed Plaintiff's deterrence claim with prejudice.  Plaintiff offers no response to the instant motion.

Plaintiff makes only one explicit reference to § 1985(2) in the body of his Amended Complaint:

> In particular the Defendants are liable for conspiracy to violate the Plaintiff[']s rights pursuant to 42 USCA section 1985(2) because 2 or more of the Defendants conspired *for the purpose of impeding, hindering, obstructing or defeating in any manner the due course of justice in New Mexico, with the intent to deny the Plaintiff the equal protection of law.*

Doc. 122, Am. Cplt. ¶ 169 (emphasis added).  This language exactly mirrors the language of the third clause of § 1985(2), aka the deterrence clause, which provides a cause of action when

> [T]wo or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws.

§ 1985(2).[7]   Plaintiff's recitation of his § 1985(2) claim in the language of the deterrence

---

[7] By comparison, a plaintiff asserts a cause of action under the enforcement clause where he claims that two or more persons conspire to injure a plaintiff "for lawfully enforcing, or attempting to enforce, the rights of any person, or class of persons, to the equal protection of the

clause is indeed confusing, in light of the Court's previous dismissal of his deterrence claim with prejudice in its March 13, 2013 Memorandum Opinion and Order, as well as its requirement that Plaintiff put Defendants on fair notice of the basis of his enforcement claim in his Amended Complaint.  (Doc. 109 at 12-13).  Further, by failing to respond to the instant motion, Plaintiff fails to point to other language in the forty-two page Amended Complaint that could be read as setting forth a plausible claim under the enforcement clause.  Accordingly, because the Court finds that Plaintiff's Amended Complaint is insufficient to show that Plaintiff has made out a plausible claim for conspiracy under the enforcement clause of  § 1985(2), the Court finds that Plaintiff's claim should be dismissed with prejudice.

**VIII.**   *Plaintiff's Counter Motion for Partial Summary Judgment*

Because the Court finds that summary judgment should be granted to Defendants on all of Plaintiff's claims, it necessarily concludes that Plaintiff's own motion for partial summary judgment on two of those claims should be denied.  However, even if Defendants had not moved for, and been granted, summary judgment on Plaintiff's (1) Count I claim for assorted violations of 42 U.S.C. § 1983, and (2) Count IV claim for wrongful termination, the Court finds that Plaintiff fails to show that he is entitled to judgment on those claims as a matter of law.

<u>**Plaintiff's Motion on His Remaining § 1983 Claims**</u>

Plaintiff's motion is limited to a single argument, reprised from his response to Defendants' Motion for Partial Summary Judgment No. I – that Defendants violated his rights

laws."  § 1985(2).                            42

under the Fourth Amendment and New Mexico law by not obtaining a search warrant before joining with the FBI to record his telephone conversations with Maximiliano Gonzales and by later relying on those recordings as evidence supporting his termination. *See* Doc. 110. There are several problems with Plaintiff's argument.

First, as the Court explained in its March 13, 2013 Memorandum Opinion and Order dismissing Plaintiff's Fourth Amendment and Abuse of Privacy Act claims, "it is well-established that the government may record a defendant's conversation with another party without obtaining a warrant, so long as it does so with the other party's . . . consent." *Id.* at 5-6. As the Court previously found that no genuine dispute of fact exists as to the voluntariness of Gonzales' consent to the recordings, it held that Plaintiff could not prevail on any challenge to the legality of the recordings. *Id.* Moreover, even if a question of fact did exist as to Gonzales' consent, Plaintiff does not set forth any evidence tending to show that any of the Defendants took part in the FBI's recording of the calls in issue.

Further, even if there was a dispute as to the legality of the FBI's recordings, Plaintiff does not attempt to show that Defendants' subsequent reliance on them in their own Internal Affairs investigation constituted a violation of clearly-established constitutional or other law. *See supra* at 35-36. Indeed, Plaintiff fails to pinpoint the nature of any of his remaining §1983 claims in the instant motion, nor does he explain how the factual allegations he revives establish a violation of any specified law. Accordingly, the Court finds that this portion of Plaintiff's motion should be denied.

## Plaintiff's Wrongful Termination Claim

Finally, with regard to his contention that he is entitled to summary judgment on his

claim for wrongful termination, Plaintiff fails to set forth the elements of a wrongful termination claim, let alone attempt to show how he has established the absence of a genuine factual dispute over whether those elements are satisfied by his factual allegations.  Indeed, both Plaintiff's opening and reply briefs make the barest of conclusory references to his wrongful termination claim, asserting only that he is entitled to summary judgment on Count I "and [ ] his Count IV claim for wrongful termination."  (Doc. 91 at 20, 21; Doc. 114 at 2, 7).

Accordingly, the Court finds that Plaintiff's counter motion for partial summary judgment should be denied.

<u>**CONCLUSION**</u>

Therefore, for the reasons set forth above, the Court finds that (1) Defendants' *Motion for Partial Summary Judgment No. II: Dismissal of Plaintiff's New Mexico Whistleblower Protection Act Claims* (Doc. 89); (2) Defendants' ai*Motion for Partial Summary Judgment No. III: Dismissal of Plaintiff's Abuse of Process and Illegal Entrapment Claims*(Doc. 90); (3) Plaintiff's *Motion to Summarily Deny (Or in the Alternative, Strike) Defendants': Daubert Motion to Exclude Robert Romero, Motion for Partial Summary Judgment No. IV, and Motion for Partial Summary Judgment No. V* (Doc. 102); (4) Defendants' *Motion for Partial Summary Judgment No. IV: Dismissal of Plaintiff's Wrongful Termination and Defamation Claims* (Doc. 94); (5) Defendants' *Motion for Partial Summary Judgment No. V: Dismissal of Plaintiffs' Remaining Claims Brought Pursuant to 42 U.S.C. § 1983* (Doc. 95); (6) *Defendants' Motion to Strike Plaintiffs Untimely-Filed First Amended Complaint* (Doc. 125); (7) *Defendants' Motion to Dismiss No. II: Dismissal of Valencia's 42 U.S.C. § 1985(2) Claim as Stated in His First*

*Amended Complaint* (Doc. 127); and (8) Plaintiff's *Counter Motion for Summary Judgment*

(Doc. 91) are granted in part and denied in part as follows:

1. Defendants' *Motion for Partial Judgment No. II: Dismissal of Plaintiff's New Mexico Whistleblower Protection Act Claims* (Doc. 89) is GRANTED;

2. Defendants' *Motion for Partial Summary Judgment No. III: Dismissal of Plaintiff's Abuse of Process and Illegal Entrapment Claims* (Doc. 90) is GRANTED;

3. Plaintiff's *Motion to Summarily Deny (Or in the Alternative, Strike) Defendants': Daubert Motion to Exclude Robert Romero, Motion for Partial Summary Judgment No. IV, and Motion for Partial Summary Judgment No. V* (Doc. 102) is DENIED;

4. Defendants' *Motion for Partial Summary Judgment No. IV: Dismissal of Plaintiff's Wrongful Termination and Defamation Claims* (Doc. 94) is GRANTED;

5. Defendants' *Motion for Partial Summary Judgment No. V: Dismissal of Plaintiffs' Remaining Claims Brought Pursuant to 42 U.S.C. § 1983* (Doc. 95) is GRANTED;

6. Defendants' *Motion to Strike Plaintiffs Untimely-Filed First Amended Complaint* (Doc. 125) is DENIED;

7. Defendants' *Motion to Dismiss No. II: Dismissal of Valencia's 42 U.S.C. § 1985(2) Claim as Stated in His First Amended Complaint* (Doc. 127) is GRANTED;

8. Plaintiff's *Counter Motion for Summary Judgment* (Doc. 91) is DENIED.

A final judgment will be entered contemporaneously herewith.

Judith C. Herrera
United States District Court Judge